FIDELITY–PHENIX FIRE INS. CO. OF NEW YORK v. UNITED STATES et al.

PREFERRED INS. CO. et al. v. UNITED STATES.

WHIPPLE v. UNITED STATES et al.

STROPECK v. UNITED STATES et al.

SONOMA COUNTY FARMERS' MUT. FIRE INS. CO. v. UNITED STATES.

GOVERNMENT EMPLOYEES INS. CO. v. UNITED STATES.

ST. LOUIS FIRE & MARINE INS. CO. v. UNITED STATES.

SECURITY INS. CO. OF NEW HAVEN et al. v. UNITED STATES.

Nos. 30860, 31000, 31033, 31045, 31451–31454.

United States District Court, N. D. California, S. D.

April 6, 1953.

Kruger & Baker, San Francisco, Cal., for Fidelity-Phenix Fire Ins. Co. of New York.

William H. Levit and Long & Levit, Los Angeles, Cal., for Preferred Ins. Co. and others.

Cresswell & Davis, Oakland, Cal., for Albert G. Whipple and George Stropeck.

George W. Murphy and Murphy, Brownscombe & Gleason, Santa Rosa, Cal., for

Sonoma County Farmers' Mut. Fire Ins. Co.

Cranson L. Hopkins and Alfred W. Newman, Vallejo, Cal., for Government Employees Ins. Co.; St. Louis Fire & Marine Ins. Co., Security Ins. Co. of New Haven, a corporation and others.

Chauncey Tramutolo, U. S. Atty., and Gerald B. Hansen, Asst. U. S. Atty., San Francisco, Cal., for United States.

GOODMAN, District Judge.

These eight consolidated actions under the Federal Tort Claims Act, 60 Stat. 812, 28 U.S.C. §§ 1346(b), 2671–80 are the aftermath of the tragic crash of an airforce B–29 aircraft at Fairfield-Suisun Air Force Base, California, the night of August 5, 1950. Within a few minutes after the crash, the B–29 exploded, scattering flaming debris over a wide area. The brunt of the explosion struck a trailer park on the base occupied by airforce personnel and their families. A number of the residents of the trailer park were injured, and many of the trailers and several automobiles parked alongside were destroyed or damaged. Several buildings on the base, as well as residences and buildings just outside the base were also damaged.

Much of this property was insured. The insurance companies, having paid the resulting claims, have brought these actions as subrogees. Recovery is sought for damage to a number of house trailers and their contents and three automobiles all belonging to enlisted men and their wives, for damage to the household furniture and personal effects of an enlisted man and his wife quartered in a government apartment on the base, and for damage to private residences and buildings off the base. The damage is alleged to have been caused by the negligence of the crew of the B–29. The Government has now moved to dismiss the complaints in so far as they seek recovery for the property losses of the airforce personnel.

The Government contends that the holding of the Supreme Court in Feres v. United States, 1950, 340 U.S. 135, 71 S. Ct. 153, 95 L.Ed. 152 that suits by servicemen for injuries which "arise out of or are in the course of activity incident to service" are not maintainable under the Federal Tort Claims Act, compels the granting of the motions. Although the Feres case denied to servicemen only the right to sue under the Tort Claims Act for *personal injuries* incident to their service, all the parties agree, and so does the court, that the same rule should apply to suits by servicemen for property losses. The parties are in disagreement as to the proper application of the rule to the stipulated facts in this case.

The stipulated facts concerning the nature of the trailer park, where the bulk of the property damage occurred, may be briefly summarized. The trailer park facilities were provided by the airforce for the use of airforce personnel and their families when personnel, who had such trailers, were assigned to the base. Airforce personnel were not required to live in the trailer park or on the base. But, there was insufficient Government housing on the base to accommodate all personnel, and the surrounding area was a critical housing area. Assignment and termination of assignment of trailer spaces in the park were made by the Base Billeting Officer, upon application and according to certain priorities. While trailers were assigned to the park, they were placed permanently in position by such means as jacks. The airforce provided toilet facilities and utilities for the park. Airforce installation personnel installed and maintained the airforce facilities. A fee was charged by the airforce for the use of the trailer space and for the utilities furnished. The occupants of the park received a "quarters allowance" in lieu of Government housing. The administration of the park was governed by airforce regulations and the park was under the jurisdiction of the base military police.

It has also been stipulated that the duties of the airforce personnel whose property was damaged did not involve any phase of the maintenance, servicing, loading, operation, dispatch or control over the plane which crashed.

Upon these facts, the plaintiffs assert that the property losses of the airforce

personnel were not "incident to their service." The Government urges that the losses were "incident to service." Moreover, the Government contends, plaintiffs are estopped to deny that this is so.[1]

It is unnecessary to resolve the asserted issue of estoppel for, in my opinion, the entire property loss of the airforce personnel was incident to their service and is not cognizable under the Tort Claims Act.

Plaintiffs have urged that the question of the incidence of a property loss to military service cannot necessarily be approached in the same manner as the question of the incidence of personal injuries to military service. I agree that this is so. For the key to the proper application of the term "incident to service" to property losses is the Military Personnel Claims Act of 1945. This act has no bearing on claims for personal injuries.

The Military Personnel Claims Act of 1945, 59 Stat. 225, 31 U.S.C.A. § 222c, was passed for the express purpose of providing a "single" statute for the settlement of claims of military personnel for the loss of their personal property incurred while in the service, House Report 237, Senate Report 276, 79th Congress, 1st Session, 1945 U.S.Code Congressional Service, p. 715. The Act was the culmination of years of effort to secure for military personnel a comprehensive system of compensation for loss of personal property in the service. Through the years the Congress had authorized the reimbursement of servicemen for certain property losses.[2]

These piecemeal enactments did not afford an adequate compensation system for personal property losses of servicemen. Many meritorious claims did not fall within the limited scope of these statutes. Noting that morale was adversely affected, the

1. The estoppel arises, the Government urges, because the airforce personnel sought and obtained reimbursement from the United States under the provisions of the Military Personnel Claims Act of 1945, 59 Stat. 225, 31 U.S.C.A. § 222c, for their property losses resulting from the crash of the B–29 to the extent that such losses were not insured. Reimbursement can be had under the Military Personnel Claims Act only for property losses "incident to service." Having obtained reimbursement for the non-insured loss upon the representation that such loss was incident to service, the airforce personnel could not consistently claim that the insured loss was not incident to their service. The Government contends that the plaintiffs, as subrogees of the airforce personnel, are in no better position to assert such a claim.

Plaintiffs urge that they are free to seek recovery upon the theory that the losses of the airforce personnel were not incident to their service. No estoppel arises, plaintiffs contend, because the Government was not misled by the representation by the airforce personnel that the non-insured loss was incident to their service. At the time the Government reimbursed such loss, plaintiffs say, the Government was apprised of all the circumstances material to a determination of whether or not the loss was in fact incident to service.

2. At least as early as 1816 the Congress

had authorized administrative reimbursement to servicemen for personal horses lost in the service. 3 Stat. 261. By the Act of March 3, 1885, the Congress provided for reimbursement for the loss of any property deemed to be reasonable and proper for a serviceman to have in his possession, if such property was ordered shipped on an unseaworthy vessel or was lost because the serviceman gave preference to the saving of endangered Government property. 23 Stat. 350. In 1918, the Congress broadened the Act of 1885 to provide reimbursement for such property if it was lost while being shipped under travel orders or if it was lost to the enemy or destroyed to prevent capture, or was otherwise lost in the field during campaign. 40 Stat. 479 and 880. In 1921 the Congress further extended the Act of 1885 to cover losses occurring while the serviceman was engaged in military duties in connection with the event causing the loss. 41 Stat. 1436, 31 U.S.C.A. § 218. An additional, and, in some respects, broader remedy for the loss of personal property was made available to servicemen by the Act of December 28, 1922, 42 Stat. 1066, 31 U.S.C.A. §§ 215–217, which authorized the head of any department to adjust and certify to Congress for payment any claim, not exceeding $1,000, for the loss of personal property due to the negligence of any employee of the Government acting within the scope of his employment.

War Department proposed a single comprehensive system for the reimbursement of military personnel and civilian employees of the War Department for all property losses incident to their service. This proposal was part of a larger plan whereby the provisions for the settlement, in a substantially uniform manner, of all claims incident to the activities of the War Department, would be consolidated into three statutes. On April 22, 1943, the Congress began to implement this plan by enacting the Foreign Claims Act, 57 Stat. 66, 31 U.S.C.A. § 224d et seq. This Act provided a means for the settlement of claims for damage caused by the armed forces in foreign countries. On July 3, 1943, the Congress passed the Military Claims Act, 57 Stat. 372. This Act consolidated all the existing statutory provisions for the administrative settlement of claims arising out of the activities of the armed forces other than foreign claims and claims of military personnel. The Military Personnel Claims Act of 1945, which embodied the War Department's proposal for compensating military personnel for property losses, was the final step in the execution of the tripartite plan. House Report 237, Senate Report 276, 79th Congress, 1st Session, 1945 U.S.Code Congressional Service, p. 715.

 The very next year, Congress passed the Federal Tort Claims Act, 60 Stat. 812. Section 424 of the Tort Claims Act repealed all previous statutes, which authorized the administrative adjustment of claims for property losses due to the negligence of government employees, if such claims were cognizable under the Tort Claims Act. The Military Claims Act of 1943, which provided for the settlement of claims of persons, other than military personnel, arising out of the activities of the armed forces in the United States, was one of the statutes specifically repealed pro tanto. No mention was made either of the Foreign Claims Act of 1943 or of the Military Personnel Claims Act, the other two statutes in the new tripartite system for the settlement of claims incident to the activities of the armed forces. It is inconceivable that these two statutes were overlooked by the Congress. The absence of any reference to the Military Personnel Claims Act in this repeal provision of the Tort Claims Act is a persuasive indication that the Congress did not consider the claims of military personnel, compensable under the Military Personnel Claims Act, to be cognizable under the Tort Claims Act. It was manifestly the intent of the Congress that the Military Personnel Claims Act should remain as the single comprehensive remedy for property losses of military personnel incident to their service.[3]

Since property losses of military personnel incident to their service are compensable exclusively under the Military Personnel Claims Act, that Act must be the guide in determining what losses are "incident to their service". General language was employed in the Military Personnel Claims Act to effectuate its comprehensive purpose. The Act provided that "the Secretary of War,[4] and such other officer or officers as he may designate for such purposes and under such regulations as he may prescribe, are hereby authorized to consider, ascertain, adjust, determine, settle, and pay any claim against the United States, including claims not heretofore satisfied arising on or after December 7, 1939,

3. The Military Personnel Claims Act as originally enacted, and as it stood at the time when the losses for which recovery is sought occurred, placed no monetary limit on the claims which were compensable under the Act. Therefore, it is unnecessary to determine whether suits may now be brought under the Tort Claims Act upon claims exceeding the $2,500 maximum prescribed for compensable claims by the 1952 amendment to the Military Personnel Claims Act, 66 Stat. 321.

4. The authority of the Secretary of War to promulgate regulations under the Military Personnel Claims Act in respect to airforce personnel was transferred to the Secretary of the Airforce under the provisions of Sections 207(f) and 208(e) of the Act of July 26, 1947, 61 Stat. 503, 504, 5 U.S.C.A. §§ 626(f), 626c(e). Transfer Order 34, April 28, 1949, 14 Federal Register 2509.

of military personnel and civilian employees of the War Department or of the Army, when such claim is substantiated, and the property determined to be reasonable, useful, necessary, or proper under the attendant circumstances, in such manner as the Secretary of War may by regulation prescribe, for damage to or loss, destruction, capture, or abandonment of personal property occurring incident to their service, or to replace such personal property in kind: Provided, That the damage to or loss, destruction, capture, or abandonment of property shall not have been caused in whole or in part by any negligence or wrongful act on the part of the claimant, his agent, or employee, and shall not have occurred at quarters occupied by the claimant within continental United States (excluding Alaska) which are not assigned to him or otherwise provided in kind by the Government."

Examples of the principal types of claims considered to be incident to service and payable under the Act are set forth in Section 3(b) of the applicable Airforce Regulations promulgated under the Act. AFR–112–7, 15 Federal Register 1511, § 836.92(b), 32 C.F.R. (1951 Revised Edition) § 836.92(b).[5]

The losses of the airforce personnel, to the extent that they were not insured, were in fact reimbursed under subdivision 3(b) (4) of the regulations, as losses incident to service resulting from a "public disaster." They were properly treated as compensable losses incident to service within the meaning of the Military Personnel Claims Act.

The legislative history of the Act is per-

5. 3. *Claims Payable:*

b. *Examples.* The principal types of claims payable under the provisions of this Regulation when damage, loss, destruction, capture, or abandonment of personal property occurs incident to the service of the claimant are as follows:

(1) *Property Located at Quarters or in Government Custody.* Where property is damaged or destroyed by fire, flood, hurricane, or other serious occurrence while located at—(a) Quarters wherever situated, occupied by the claimant, which were assigned to him or otherwise provided in kind by the Government; or (b) Quarters not within the Continental United States, occupied by the claimant, but not assigned to him or otherwise provided in kind by the Government (for the purposes hereof, Alaska is deemed not to be within the Continental United States), except where the claimant, if a civilian employee, is a local inhabitant or not a national of the United States; or Where property is damaged, lost, or destroyed while in the custody of the Government.

(2) *Transportation Losses.* Where property, including baggage checked, is damaged, lost, or destroyed incident to transportation by a carrier or an agent or agency of the Government:

(a) When shipped under orders; or

(b) In connection with travel under orders; or

(c) In connection with travel in performance of military duty with or without troops.

Claims for transportation losses may be approved only to the extent that the shipment conforms to the provisions of AFR 75–30, 29 April 1949.

(3) *Marine or Aircraft Disaster.* Where property is damaged, lost, destroyed, or abandoned in consequence of perils of the sea or hazards in connection with the operation of aircraft.

(4) *Enemy Action or Public Service.* Where property is damaged, lost, destroyed, captured, or abandoned as a result of enemy action or threat thereof, combat or activities incident thereto, belligerent activities or unjust confiscation by a foreign power or its nationals, civil disturbances, public disasters, or the saving of Government property or human life.

(5) *Money:*

(a) When commercial facilities are not available and personal funds are accepted by personnel acting with authority of the unit or detachment commanding officer for safekeeping, soldiers' deposit, transmission by personal transfer account, or other authorized disposition, and such personal funds are neither applied as directed by the owner nor returned to him, such losses are reimbursable when established by satisfactory evidence.

(b) A claim for loss of personal funds under this subparagraph may not be approved in an amount greater than that which it was clearly reasonable for the claimant to have in his possession under the circumstances existing at the time of loss.

suasive that the term "incident to their service" must be given a broad application. In presenting its proposal for a comprehensive system for settling the claims of military personnel for property losses, the War Department noted that the morale of the armed forces is directly affected by the manner in which such claims are handled. Dissatisfaction had arisen as a result of the hairsplitting distinctions in the application of the prior statutes. A niggardly policy in processing claims for compensation was precisely what the new statute was designed to prevent.

Specific indication that the framers of the Military Personnel Claims Act intended that the term "incident to their service" should be liberally interpreted in favor of claimants is afforded by the examples, submitted to the Congress by the War Department, of actual claims which were disallowed under the prior statutes but which could be paid under the new statute.[6]

■ The examples of compensable claims, set out in footnote 6 and others listed by the War Department, illustrate that the term "incident to their service" was not employed in the statute in any restricted sense to require that a compensable loss occur during the performance of military duties or on a military base. The term was used in a general sense merely to indicate that the loss must bear some substantial relation to the claimant's military service. Here the losses of the airforce personnel did have the required relationship to their service. In reaching this conclusion, I have considered the case of Lund v. United States, D.C.Mass.1952, 104 F.Supp. 756, cited by plaintiffs. In that case a naval officer drove his private automobile to the Naval Air Station where he was to take a training flight. He parked the automobile in a Government parking area. While he was on the training flight, his automobile was damaged by stones thrown against it by the propeller-wash of a Navy plane which had been improperly taxied. The court held that the damage was not incident to the service of the officer and that recovery might be had under the Tort Claims Act. But, inasmuch as the court gave no consideration to the Military Personnel Claims Act, the decision is not helpful here.

■ It has been stipulated that all of the destroyed or damaged property was the community property of the claimants and their wives. Plaintiffs contend that the loss by a wife of her interest in the community property cannot be said to be incident to the service of her husband. Several cases have been cited in which it was held that wives of servicemen could sue under the Tort Claims Act for personal injuries resulting from improper treatment in Army hospitals because such injuries were not incident to the service of their husbands.[7] But, as plaintiffs themselves have urged, the personal injury cases are not apropos. The ownership of the property has nothing to do with whether or not its loss was incident to service. If the loss is incident to service, reimbursement must be sought under the Military Personnel Claims Act regardless of who owns the property.

6. Among these were claims such as the following: claim for the loss of personal property and household furniture stored in a house destroyed in a brush fire while the claimant was on duty as a medical officer at a base 17 miles away; claim for household goods lost when a hurricane destroyed the homes in which the claimants and their families were quartered on a military post; claim for personal property lost while stored with a supply sergeant during the claimant's absence on furlough; claim for damage to a piano being moved from the base at which the claimant had previously been quartered to his home off base; claim for household goods damaged during shipment from Puerto Rico to the United States, the shipment having been made because the family of the claimant, who was stationed in Puerto Rico, decided for personal reasons to return to the United States; claims for damage to private automobiles struck by government vehicles while the claimants were traveling from one duty station to another. House Report 237, Part II, pages 12, 13, 32, 18, 19 and 26, 79th Congress, 1st Session.

7. Herring v. United States, D.C.Colo.1951, 98 F.Supp. 69; Messer v. United States, D.C.N.D.Fla.1951, 95 F.Supp. 512.

Section 5(b) of the airforce regulations specifically provides that "claims which are otherwise within the provisions of this Regulation will not be disapproved * * * for the sole reason that the claimant was not the legal owner of the property in relation to which the claim is made. For example, property may be the subject of a claim even though borrowed from others." AFR–112–7 § 5(b), 15 Federal Register 1512, § 836.94(b); 32 C.F.R. (1951 Revised Edition) § 836.94(b).

Plaintiffs also urge that even if the property losses of the airforce personnel were incident to their service, the damage to the trailer houses and their contents was not compensable under the Military Personnel Claims Act for another reason. The damage to the trailer houses and their contents, plaintiffs contend, falls within the statutory proviso excluding from compensable losses those occurring in quarters occupied by the claimant which are not assigned to him or otherwise provided in kind by the Government. But the trailer park in fact was "assigned" quarters within the meaning of the statute. The trailers were parked in specific locations assigned by the Base Billeting Officer. They were permanently placed in position while they remained in the park, and were connected to airforce utility lines which could be disconnected only by airforce installation personnel. That the occupants of the trailer park paid a fee, and received a quarter's allowance in lieu of government housing, does not alter the fact that they were occupying quarters specifically "assigned" to them.

In respect to the claim for damage to the automobiles belonging to the airforce personnel, the court has noted that the airforce regulations promulgated under the Military Personnel Claims Act provide that "claims for motor vehicles ordinarily will not be paid." AFR–112–7, § 4(g); 15 Federal Register 1512, § 836.93(g); 32 C.F. R. (1951 Revised Edition) § 836.93(g). The regulations, however, authorize reimbursement for motor vehicle damage occurring under certain special circumstances, among which are "public disasters." Since the crash which caused the damage here was treated as a "public disaster" the damage was compensable to the extent that it was not insured. This being so, it is unnecessary to determine whether military personnel may sue under the Tort Claims Act for property losses, which, by regulation, are not reimbursable under the Military Personnel Claims Act.

Since the airforce regulations, promulgated under the Military Personnel Claims Act, prohibit the reimbursement of insurers for losses which they have assumed, plaintiffs are left without a remedy, if they cannot sue under the Tort Claims Act. AFR–112–7, § 4(i), 15 Federal Register 1512, § 836.93(i), 32 C.F.R. (1951 Revised Edition) § 836.93(i). However, the purport of the regulations respecting insured property losses of military personnel is to secure for the Government the benefits of any insurance which may have been purchased by the military personnel. The regulations require that the claimant first seek recovery from the insurer. If the insurer denies liability, and the Government assumes the loss, the claimant is required by the regulations to assign whatever claim he may have against the insurer to the Government. AFR–112–7, §§ 10, 11, 12; 15 Federal Register 1513, §§ 836.98, 836.99, 836.100; 32 C.F.R. (1951 Revised Edition) §§ 836.98, 836.99, 836.100. If plaintiffs feel themselves aggrieved by this Governmental policy, their recourse must be to the Congress. Suits against the Government by insurers to recover for the service-connected property losses of military personnel, are not authorized under the present statutory scheme.

To the extent prayed for, the Government's motions to dismiss are granted.