Mearl C. **TILLMAN** and Emily P. Tillman, Husband and Wife, Appellants,

v.

**UNITED STATES** of America, Appellee (And Related Cases).

No. 14590.

United States Court of Appeals Ninth Circuit.

April 9, 1956.

Rehearing Denied May 15, 1956.

Virgil Crum, Crum & Smith, William
C. Ralston, Portland, Or., for appellants.

Warren E. Burger, Asst. Atty. Gen.,
Bonnell Phillips, John J. Finn, Attorneys,
Department of Justice, Washington, D.
C., C. E. Luckey, U. S. Atty., Portland,
Or., Walker Lowry, Sp. Asst. to Atty.
Gen., San Francisco, Cal., for appellee.

Before HEALY and CHAMBERS,
Circuit Judges, and HARRISON, District Judge.

HARRISON, District Judge.

This is an appeal from the United
States District Court for the District of
Oregon, wherein the government was held
not liable under the Federal Tort Claims
Act, 28 U.S.C.A. §§ 1346, 2671 et seq.,
for property damages caused by floods
when the Columbia River went on a
rampage in the year 1948.

The facts disclose that in 1949 fifty-two
separate actions were filed against the
United States government for damages
resulting from the cutting of an under-
pass through the Denver Avenue embank-
ment. All the plaintiffs were landowners
in the Peninsula Drainage District No. 2.

Denver Avenue was first constructed
by the County of Multnomah in 1915.
It consists of a high embankment or fill,
over thirty feet in height and supports
pavement fifty-two feet in width. It was
constructed as an approach to the inter-
state bridge which connects Oregon with
the State of Washington.

In 1937 the State Highway Commis-
sion assumed full and complete jurisdic-
tion of this highway in accordance with
the laws of the State of Oregon. (See
O.C.L.A. § 100–130; O.C.1935 Supp. §
44–156).

With the advent of war in 1942, the
government, pursuant to the necessities
of war, caused to be constructed a large
housing project to the west of Denver
Avenue, covering about a square mile of
land which became known as Vanport.

The contractors of the housing project
sought, through the Oregon Highway
Commission, a means of entrance or
egress to this large housing project for
convenience of the inhabitants thereof,
as well as those living in Drainage Dis-
trict No. 2.

The engineers of the State Highway
Commission realizing the impracticabil-
ity of intersecting Denver Avenue, due to
the heavy traffic thereon, devised and
planned an underpass beneath it. The
underpass was constructed by the said
Commission under plans and specifica-
tions provided by it. The contract for
such construction was let to Tower Sales
and Erecting Company by Kaiser Com-
pany. The work of building the under-
pass proceeded to completion under the
constant supervision and inspection of
said Highway Commission.

Denver Avenue was designated as the
dividing line between two drainage dis-
tricts called Peninsula Drainage District
No. 1, which was downstream and Penin-
sula Drainage District No. 2, which was
upstream. Plaintiffs in this case own
property in Drainage District No. 2,
which was organized under the Drain-
age District Laws of the State of Oregon.
District No. 1 was protected from floods
on the north, west and south by railroad
fills and by levees. The same works pro-
tected District No. 2 on its western side.
District No. 2 between 1917 and 1921
built dikes on its north, south and east
sides which connected with the works of
District No. 1, thus completely surround-
ing both districts. Neither district spent
time nor money in attempting to
strengthen the mound-fill upon which
Denver Avenue is located. At no time
was any request made of any one that

the Denver Avenue fill be strengthened as a part of the protection to be afforded said Drainage District No. 2.

After the construction of the underpass at Denver Avenue and upon protest of District No. 1, a ring levee was built on land condemned by the federal government at the upriver side of the opening of the underpass in District No. 2. The purpose of the ring levee was to afford protection to District No. 1 from possible overflow of flood waters from the east in the event of failure of the dikes of District No. 2. Subsequent events disclosed it did afford some protection to the properties located in District No. 2.

On May 30, 1948, an unprecedented flood of the Columbia River occurred. The western embankment, which was the railroad fill, failed, resulting in the flooding of District No. 1. District No. 2 was protected by the Denver Avenue fill until the next day, May 31st, when the ring levee constructed at the east of the underpass gave way, and as a result District No. 2 was also flooded.

Both districts continuously diverted, for their own purposes, the Columbia River from a part of its ancient bed. The major portion of their lands are below the ordinary high water level of the Columbia River.

In order to construct or to have the benefit of protection works under the laws of Oregon (See O.C.L.A. § 123–101), these landowners or their predecessors were endowed with certain powers and charged with the responsibility of taking the necessary action to protect lands within their respective districts and had the authority to levy assessments to do so.

District No. 2 depended on the western embankment of District No. 1, to protect it from overflow from the west. The breaking of the railroad embankment was the sole cause of the flooding of District No. 2. Said failure was not due to any negligence upon the part of the defendant, its agents or employees. Clark v. United States, D.C., 109 F.Supp. 213.

The federal government did not construct or have any control over Denver Avenue or the underpass. (See O.C.L.A. § 100–130). While the federal government paid for the construction of the ring levee and it stood upon government owned land, it was never relied upon by District No. 2 for protection. If any reliance was placed thereon, it was by District No. 1. The same is true insofar as Denver Avenue is concerned. Denver Avenue possibly may have been constructed differently. No one contemplated any danger of overflow from the west, and as a result for six years after the underpass was cut and the ring levee constructed Drainage District No. 2 did nothing to protect itself, notwithstanding it had the continuous duty of maintenance, strengthening and repair of either Denver Avenue or the western embankment. All of this time the district had sovereign power of eminent domain and assessment for such purposes. (See O.C. L.A. § 123–101).

The appellants' assignments of errors depend entirely upon the sufficiency of the evidence to support the findings. A pre-trial order, prepared with meticulous care, was filed in this case and constituted almost the entire evidence. There was little oral evidence offered and admitted in addition to the pre-trial order, which does not add to or detract from the facts set forth in the pre-trial order.

Without setting forth each assignment of error, suffice it to say the findings of the trial court are fully substantiated by the transcript of the record.

An identical factual situation was presented to this court by the inhabitants of Vanport wherein this court in Clark v. United States, 9 Cir., 218 F.2d 446, at page 451 said:

"As to the liability of the United States because of the alleged negligence of the Engineers, we think a provision of 33 U.S.C.A. § 702c bars recovery. That section places certain conditions upon federal expenditures in aid of flood control and provides that: 'No liability of any kind shall attach to or rest upon the United States for any damage from or by

floods or flood waters at any place'. Appellants assert that this provision applies only to flood control aid on the Mississippi; however, supplemental acts authorizing expenditures on other rivers incorporate this provision. 33 U.S.C.A. § 701e. We find no merit in appellants' contention that the Tort Claims Act repealed this provision by implication. The provision of 33 U.S.C.A. § 702c barring liability 'from or by floods or flood waters' expresses a policy that any federal aid to the local authorities in charge of flood control shall be conditioned upon federal non-liability. To base recovery here on any act or omission of the Engineers in assisting in the fight against this flood would run counter to the policy thus expressed. See National Mfg. Co. v. United States, 8 Cir., 1954, 210 F.2d 263, 270–275, certiorari denied 347 U.S. 967, 74 S.Ct. 778 [98 L.Ed. 1108]."

The Honorable James Alger Fee, the trial judge, in his finding 6 [page 147 of the transcript of record] found as follows:

"6 The sole cause of damage to plaintiffs was the failure of the western embankment at District No. 1. The United States was not responsible for the failure of the western embankment and no act or omission of the United States or its employees had causal connection with any damage to plaintiffs' property."

The evidence unmistakably discloses that the failure of the railroad embankment in District No. 1 was the sole and proximate cause of the flooding of District No. 2, an embankment over which the government at no time had any control. This eliminates any consideration as to the ring embankment. Restatement, Torts §§ 431, 433 (1934); 65 C.J.S., Negligence, § 103 et seq., p. 645;

14 C.J.S., Cause, p. 45; Aune v. Oregon Trunk R. R., 1935, 151 Or. 622, 51 P.2d 663; Leavitt v. Stamp, 1930, 134 Or. 191, 293 P. 414; Brady v. Oregon Lumber Co., 1926, 118 Or. 15, 245 P. 732, 45 A.L. R. 812.

Since the argument in this case, appellants have called to our attention the recent Supreme Court case of Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, but it is difficult to rationalize that case with the one at bar. Apparently appellants feel the government owed a duty to maintain the ring embankment for the protection of the inhabitants of District No. 2. If that is their contention, it must be remembered the ring embankment was built for the protection of District No. 1, in the event the levees in District No. 2 should fail. The protection of Drainage District No. 2 was solely the responsibility of said District. The inhabitants of District No. 2 had the power and duty to protect themselves. They cannot now, as an afterthought, charge the government with their own indifference until it was too late.

It should also be noted that the ring embankment was built by contractors and the underpass was also built by contractors under the sole supervision, jurisdiction and control of the Oregon State Highway Commission, consequently, if Drainage District No. 2 had any claim for damages such claims should have been pressed against the contractors and the Oregon State Highway Commission. The record fails to show that any damage was caused by the wrongful act or omission of any employee of the government while acting within the scope of his office or employment. Strangi v. United States, 5 Cir., 211 F.2d 305; 28 U.S.C.A. § 1346(b).

For the foregoing reasons the judgment is affirmed.