BUILDERS CORPORATION OF AMERICA, a Corporation, and Herlong Sierra Homes, Inc., a Corporation, Appellants,

v.

UNITED STATES of America, Appellee.

No. 15533.

United States Court of Appeals Ninth Circuit.

May 6, 1958.

Landis, Brody & Martin, Alvin Landis, Sacramento, Cal., for appellants.

George Cochran Doub, Asst. Atty. Gen., Morton Hollander, Paul A. Sweeney, William W. Ross, Attys., Dept. of Justice, Washington, D. C., Lloyd H. Burke, U. S. Atty., San Francisco, Cal., for appellee.

Before DENMAN, POPE and FEE, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

This is an action whereby Builders Corporation of America [1] and Herlong Sierra Homes, Inc.,[2] which built a series of dwelling houses adjacent to Sierra-Ordnance Depot,[3] a military installation, in an isolated location far from points of urban development, for the military and civilian personnel of the Depot, claimed to have been damaged by the acts and negligence of certain agents of the United States, who, contrary to orders, prevented the personnel from occupying these dwellings.[4] Judgment against Builders and Homes was entered by the trial court after a motion to dismiss had been sustained.[5] This appeal followed.

The sole question is whether the motion to dismiss should have been sustained or the facts should have been further developed before judgment entered.

The complaint sets out allegations which are here summarized.

The government, through the Department of Defense, operates the Sierra-Ordnance Depot in a desolate and isolated region of California. The officers in charge thereof are agents of the United States. The Federal Housing Administration is authorized under federal law to insure mortgages on housing built for rent for residential use for civilian

---

1. Hereinafter called "Builders."

2. Hereinafter referred to as "Herlong."

3. Designated herein as "Depot."

4. This action was brought under the provisions of the Federal Tort Claims Act. 28 U.S.C.A. §§ 1346(b), 2671 et seq.

5. Builders Corporation of America v. United States, D.C., 148 F.Supp. 482.

and military personnel. The Federal Housing Administration is a constituent agency of the Housing and Home Finance Agency of the federal government. It encourages improvements in housing conditions and provides a system of mutual mortgage insurance. Where rental housing is built by private enterprise on or near military reservations, the mortgage may be insured by the Federal Housing Administration only when the Secretary of Defense or his designee shall have certified that it is necessary to provide adequate housing for the personnel, that the installation is a permanent part of the Military Establishment, and that there is no present intention to curtail activities at that installation. The Federal National Mortgage Association is a federal agency which aids in effecting these purposes by providing a secondary market for mortgages insured or approved by the Federal Housing Administration.

Because of the isolated location of the Sierra-Ordnance Depot, the Department of Defense had constructed temporary housing for civilian and military personnel there, which had become inadequate. The Department of Defense entered into negotiations with the Federal Housing Administration and other federal agencies to obtain and finance, by insuring mortgages thereon, the construction of dwelling houses to adequately house the personnel above mentioned. The Secretary of the Army certified the requirements above mentioned and also certified that the personnel who were expected to occupy these dwelling units would be capable of paying the rentals proposed. The Federal Housing Administration, upon this certification, agreed to insure the mortgages on these dwelling units.

Plaintiffs, thereupon, relying upon the administrative rulings of the Department of Defense and the commitment of the Federal Housing Administration to insure the mortgages, undertook to construct these dwelling houses. The dwelling houses were constructed and were all ready for occupancy by August, 1954. The mortgages were privately negotiated and were to be insured or purchased by Federal Housing Administration or Federal National Mortgage Association. The Commanding General of the Sixth Army, by three different positive orders to the Commanding Officer of the Sierra-Ordnance Depot, directed that a coordinated and aggressive program (the details of which are alleged) be developed to attain full occupation of the dwelling houses so constructed. Notwithstanding the fact that the Commanding Officer of the Depot and other government agents knew there were no other available tenants in virtue of the isolated situation of the base and that plaintiffs would be required to spend money in the payments on mortgages, taxes and operation and maintenance of the property, they did not follow these directions. It is directly alleged that these government agents, "with intention of damaging plaintiffs, deliberately, intentionally, and wilfully failed and refused to carry out the orders issued as aforesaid and failed and refused to initiate or implement any program to assure maximum occupancy of the dwelling units constructed by plaintiffs; failed and refused to establish income limitations for those who were to occupy the houses owned and operated by the defendant, United States of America, as part of the Sierra-Ordnance Depot; failed and refused to take any action to demolish any of the temporary and substandard housing; and failed and refused to issue notices to those specified in said orders to vacate government housing not later than the 1st day of September, 1954."

It is further set up that these agents of the government, for the purpose of delaying and preventing civilian and military personnel from occupying these dwelling houses and to circumvent the orders and directives above recited, made false statements to the Commanding General of the Sixth Army, Federal Housing Administration and Housing and Home Finance Company, concerning structural defects in these houses, and charged that plaintiffs had improperly constructed the same. It is further alleged that these agents of the government, "acting within

the scope of their authority and employment, by threats and intimidation and abuse of the authority vested in them by virtue of their respective positions, sought to and did preclude and prevent said military and civilian personnel from moving into said dwelling units constructed by plaintiffs." Plaintiffs set up that they lost rental income and were otherwise damaged in a sum over three million dollars.

There is a second cause of action where a similar state of facts is alleged, but the government agents are said to have acted carelessly and negligently in failing to carry out the orders and directives and in making false statements as to the construction of the dwelling houses.

A motion to dismiss was interposed on two grounds: (1) that the complaint failed to state a cause of action, and (2) that the court lacked jurisdiction over the subject matter of the action under the Tort Claims Act.

The opinion as to the first count of the complaint goes on the ground that Congress, by the Tort Claims Act, did not surrender the traditional immunity of the United States from suit in certain specific areas there outlined. In one of these, no recovery can be had for the tort of interference with contract rights.[6] The trial court held that the law of California applied. With this position we agree.[7] The analysis of the law of that state indicates clearly that both interference of contract rights and interference with prospective advantage depend upon the same principles. There is no doubt that the analysis of the trial court is thorough and correct. If the claim of plaintiffs is based upon the alleged willful interference of the government agents with the actual rental contracts with civilian and military personnel, it must fail. There may be doubt that interfer-

ence with a prospective advantage falls within the statutory exception. The trial court held, however, that the exception applied as to count one.

There is another ground which was argued before this Court but which was not presented in the opinion of the District Court. The Act expressly excludes from coverage torts of deceit and misrepresentation.[8] It is claimed that both counts are based upon willful or negligent misrepresentation of the condition of these dwelling units to the personnel, thus preventing them from occupying these units. This Court is of opinion that the gist of the complaint as to this phase is different. In any event, the holding of the trial court is more nearly accurate in analysis.

As to count two, the trial court held that no claim was stated upon which relief could be granted. The basis of this ruling was that negligence was charged, but that no duty upon the part of the United States could be predicated upon the facts alleged.

The trial court did not consider the question of whether the facts recited in the complaint showed that the action was barred by the discretionary function exception, since the matter had been disposed of upon the grounds above recited.

The validity of the position of the trial court as to count one cannot be questioned, once it be admitted that there is an attempt by the pleader to state a cause of action in tort based upon interference with actual contract rights with members of the personnel of the Depot.

The ground chosen by the trial court was that there was no jurisdiction of count one because the allegations stated a claim for the tort of interference with contract rights. An exception in the Act exempts the government from liability

6. "The provisions of this chapter and section 1346(b) of this title shall not apply to— * * * (h) Any claim arising out of * * * interference with contract rights." 28 U.S.C.A. § 2680.

7. United States v. Sutro, 9 Cir., 235 F. 2d 499, 500. Cf. Massachussetts Bonding

& Insurance Co. v. United States, 352 U.S. 128, 77 S.Ct. 186, 1 L.Ed.2d 189.

8. "The provisions of this chapter and section 1346(b) of this title shall not apply to— * * * (h) Any claim arising out of * * * misrepresentation [and] deceit * * *." 28 U.S.C.A. § 2680.

for such interference, as we have seen. But the gist of the complaint is rather that the agents failed and refused to perform obligations which the government had assumed in virtue of contracts and commitments of other agencies.

The complaint alleges misrepresentations were made to the personnel as to the condition of the dwelling houses. There is no adequate explanation of these allegations. The purpose seems to have been to negative a defense. The representations as to the condition of the dwelling houses are alleged to have been false. It is alleged these were made by the agents, with knowledge of falsity, "for the sole purpose of, * * * justifying their disobedience of * * * orders." However, it is plain that the misrepresentations do not constitute the gravamen of either of the claims, but rather the alleged arbitrary action and unjustified disobedience by a military commander of orders for the purpose of injuring plaintiffs in disregard of commitments of the government.

The loss resulting from the failure of the personnel to move into and pay rental for the dwellings is only a minor part of the bases alleged for the damages claimed. The allegations make clear that the failure of these defendants properly to carry out the commitments made and obligations assumed by the government through other of its agents or agencies resulted in a loss in the value of the property.

If these allegations be taken with the knowledge that the Commanding Officer of such a post has almost absolute control over the personnel living on the field, it is plain that misrepresentation may afford him self justification, but the power is the damaging factor to plaintiff.

In any event, the cause of action which plaintiffs attempt to state does not fall within either of the statutory exceptions.

As to count two, which is based upon a charge of negligence against the same agents, the trial court found no duty owing to plaintiffs was infringed upon by the acts or omissions of the agents of the government.

Whether a duty to plaintiffs may not be found on the part of the military officers to carry out orders received from the Department of Defense, issued to carry out commitments of other agencies, raises a question never before presented. The attorneys for the government contend that, if such a duty existed, it was owed to the United States and not to plaintiffs.

The removal of the bar of immunity from the sovereign has given tremendous scope to suits of this character under the Act. Even where the duty is primarily owed to the sovereign, a duty to the individual injured is at times established by the courts. If the state recognized a general doctrine requiring due care in dealings between individuals, the United States has been held liable, even though the particular occurrence had no parallel in dealings between private parties.[9] Likewise, where a government officer has commenced to perform a statutory duty to the United States, he has been held to have the same duty toward a third person as if he had been a volunteer.[10]

In the area of governmental responsibility for the acts of its agents, the law is in a state of flux. This legislation was heralded as abolishing the medieval maxim,[11] "The King can do no wrong,"

---

**9.** See Rayonier, Incorporated, v. United States, 352 U.S. 315, 77 S.Ct. 374, 1 L. Ed.2d 354; Eastern Air Lines, Inc., v. Union Trust Company, 95 U.S.App.D.C. 189, 221 F.2d 62, 75, affirmed per curiam sub nom., United States v. Union Trust Co., 350 U.S. 907, 76 S.Ct. 192, 100 L. Ed. 796.

**10.** Indian Towing Co. v. United States, 350 U.S. 61, 69, 76 S.Ct. 122, 100 L.Ed.

48; Somerset Seafood Co. v. United States, 4 Cir., 193 F.2d 631.

**11.** The King "non potest peccare." Le Grand Case in le Court Gards, 2 Rolle 294, 304, 81 Eng.Rep. 809, 815. Case LXXXIV, 2 Jac. 7 Co. 32, the case of The King, Tenant in Tail. Perogative, Tail, Judges, Pardon, 145 Eng.Rep. 224, 225.

with respect to a modern government. Recently, interpretation has vastly enlarged the sphere of responsibility of government. In this field, where the substantive law is unsettled, it is advisable to hold that a complaint should not be held without merit unless it is absolutely clear that no cause of action could be stated given the actual facts,[12] especially where a statutory exception is relied upon.

The danger of sustaining a motion to dismiss to a complaint under the Tort Claims Act is beautifully illustrated by the Indian Towing Company case. There the claim was that the failure of a light maintained as an aid to navigation was due to the negligence of members of the Coast Guard in maintaining and servicing the light whereby a tug grounded and the cargo on her tow was wetted. The District Court sustained a motion to dismiss.[13] The Court of Appeals of the Fifth Circuit affirmed. Indian Towing Co. v. United States, 5 Cir., 211 F.2d 886. The Supreme Court of the United States first affirmed by an equally divided court, 349 U.S. 902, 75 S.Ct. 575, 99 L.Ed. 1239, then restored the case for reargument, 349 U.S. 926, 75 S.Ct. 769, 99 L.Ed. 1257. Finally, by a five to four decision, the judgment of the Court of Appeals was there reversed and the cause remanded to the District Court for further proceedings, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48.

Great emphasis has been laid upon the rule that the clauses of this statute circumscribe a field of jurisdiction. The basis of the doctrine is that the enactment is in derogation of the common law. The United States cannot be the subject of suit unless the cause falls within the boundaries laid down. No doubt this principle applies to a pleading and in certain clearcut cases can be applied.

But it seems that the courts are bound to find whether the actual facts, not the pleaded "facts," bring the cause within the statute or no.

It is the announced position of the Office of the Attorney General that cases against the government will be disposed of on the merits rather than on technical interpretations of the pleadings. Here, however, a motion to dismiss was relied upon as if the Federal Rules of Civil Procedure, 28 U.S.C.A. had never been adopted.

█ The spirit of the Rules is that technical requirements are abolished and that judgments be founded on facts and not on formalistic defects. Pretrial conferences have been authorized to carry out these objectives. Controlled discovery and proper admissions can expand the field of established fact.

Complete acceptance of this doctrine need not eliminate and, in truth, does not eliminate the formulation of issue by accurate pleading. But, under the present Rules, the pleadings must present at least a semblance of the truth. The doctrine that a complaint should state a cause of action has not been discarded. But the disposition to rule in such manner that no complaint can state a claim, whatever the facts, has vanished. In this case great emphasis must be laid upon the obvious fact that, if we view this complaint as filed by an individual against another individual as defendant, a cause of action under the law of California, impregnable against motion to dismiss, is stated. The statutory exceptions should be therefore treated as affirmative defenses to be determined upon the facts.

██ It is true a motion to dismiss can still be sustained where the pleader is compelled by the facts to base the com-

12. Other courts have dealt with motions to dismiss in unsettled areas of law under the Tort Claims Act. "In the present fluid and relatively uncertain state of the law, this is certainly not a case to dispose of on a motion to dismiss the complaint." Fair v. United States, 5 Cir., 234 F.2d 288, 296. "A reading of the [act] * * * indicates the necessity of having the facts before the court for a proper ruling on the application of the Act." Spohn v. United States, D.C., 16 F.R.D. 240, 241.

13. Opinion apparently unreported.

plaint upon an unmistakable theory of action. A motion to dismiss is at times properly sustained to claims under the Tort Claims Act if the basis thereof is unmistakable and unsustainable. An illustrative example is Mid Central Fish Co. v. United States, D.C., 112 F.Supp. 792, affirmed sub nom., National Manufacturing Co. v. United States, 8 Cir., 210 F.2d 263, certiorari denied 347 U.S. 967, 74 S.Ct. 778, 98 L.Ed. 1108. However, the entire area had theretofore been defined and delimited by pretrial conferences and orders [14] in other cases, where the judgments had followed after trial.[15]

When the court inquired of the representatives of the government why no pretrial conference was held, the answer was that such procedure was unnecessary.

The arguments for the government were that the court had no jurisdiction to entertain the action because (1) count one constituted a claim of interference with contract rights and (2) that the gist of both counts is misrepresentation.

The complete answer to both propositions is that it is impossible to say from the face of the complaint that the assumptions are true. Much less is one able to say that, if one knew the facts, no judgment could be granted thereon. It is to be noted that in an ordinary action such defenses by a private party would necessarily be in the answer. It is mere accident that plaintiff must negative these grounds in the complaint.

■ But the problem remains whether the complaint stated a cause of action under California law sufficient so that the United States Supreme Court would recognize it against the government.[16] In

this the sphere of action is universal. The obstacles for the attorneys of the government can fly in from all directions to abolish the theory. These circumstances motivated the question of the court as to whether a pretrial conference might not have been held.

We have no means of knowing what the California courts would say if confronted with a situation which we are about to outline. A private person owned a great manufacturing plant on a desert isle, isolated from communication, where hundreds of men were employed. He arranged with another to invest millions in housing there, upon the affirmations that all these employees would be driven out of existing housing and thus would obtain dwellings in the new units. The other built the housing and was prepared to receive tenants. A group of supervisory employees of the factory owner, acting within the scope of their authority, without cause and contrary to the orders of the owner, told the other employees they would be fired if they went into the new housing. As a result the investment in the housing was a total loss.

As to whether the facts here alleged could found an action in tort or in contract or in tort with a subsidiary basis in contract, no opinion is expressed. If a cause of action in contract is pleaded, it might well not be within the jurisdiction of the District Court. Therefore, in any event, the judgment of dismissal should have been without prejudice.

Under such circumstances, it cannot be said that the complaint does not state a claim or a cause of suit. If the court were dealing with facts and not allegations, the matter would be clarified.

14. Clark v. United States, D.C., 13 F.R.D. 342.

15. Clark v. United States, D.C., 109 F. Supp. 213.
   The holdings in the Clark case were subsequently affirmed in Clark v. United States, 9 Cir., 218 F.2d 446, and Tillman v. United States, 9 Cir., 232 F.2d 511.
   For other cases indicating the value of pretrial procedure, see Fidelity-Phenix Fire Insurance Co. of New York v. United States, D.C., 111 F.Supp. 899, af-

firmed sub nom., Preferred Insurance Co. v. United States, 9 Cir., 222 F.2d 942. Cf. Archer v. United States, 9 Cir., 217 F.2d 548, 551.

16. The provisions of the Tort Claims Act "make the United States liable * * * if [state] * * * law would impose liability on private persons or corporations under similar circumstances." Rayonier, Incorporated, v. United States, 352 U.S. 315, 318, 77 S.Ct. 374, 376, 1 L.Ed.2d 354.

Pretrial conferences with frank disclosures by the government agents as well as plaintiffs would probably give a firmer basis for trial and for judgment.

Reversed.

POPE, Circuit Judge (concurring).

While I have some reservations about the suggestion in the court's opinion that statutory exceptions should be "treated as affirmative defenses", yet I am heartily in accord with Judge FEE'S statement: "The spirit of the Rules is that technical requirements are abolished and that judgments be founded on facts and not on formalistic defects." I think a case of this importance, in a field where the law remains unsettled, ought not to be disposed of upon a mere motion to dismiss without opportunity to develop what the precise facts are.

That is the point of Kennedy v. Silas Mason Co., 334 U.S. 249, 68 S.Ct. 1031, 92 L.Ed. 1347. This court followed that case in Pacific American Fisheries v. Mullaney, 9 Cir., 191 F.2d 137, 141. In the Silas Mason case, noting it was an important one, the Supreme Court refused to dispose of it upon a motion for summary judgment notwithstanding the motion may have been technically correct. Said the Court: (334 U.S. at page 256, 68 S.Ct. at page 1034) "No conclusion in such a case should prudently be rested on an indefinite factual foundation." Also, (334 U.S. at page 257, 68 S.Ct. at page 1034): "We consider it the part of good judicial administration to withhold decision of the ultimate questions involved in this case until this or another record shall present a more solid basis of findings based on litigation or on a comprehensive statement of agreed facts."

The attitude of the Silas Mason case toward rulings based on the sufficiency of a complaint alone was again expressed in Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80: "In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." [1]

In this constantly expanding area of the Tort Claims Act it would appear that the Supreme Court is trying to follow the spirit of the Act in giving it a liberal interpretation. In this case, if the facts are fully developed we may find a cause of action which the Supreme Court will hold not within any exception to the Act. Let me illustrate. One exception asserted here is that under subdivision "h" of § 2680 of Title 28 relating to "any claim arising out of * * * interference with contract rights." If the Supreme Court follows the tendency indicated in the court's opinion it may well give that exception a strict construction. The plaintiff, as I understand the case, had no contracts with government employees on the base, but he did have certain legally recognizable rights which in ordinary cases are subject to enforcement or protection. What the plaintiff had here was a right to negotiate for leases; a right to seek customers; a right of expectation of business dealings with those people. This was not strictly speaking a contract right because no such contracts had been made. See our opinion in Beacon Theatres v. Westover, 252 F.2d 864, 866, discussing the "right so [to] negotiate". Tortious conduct destructive of appellant's "right to negotiate" for tenants may well be something not within the stated exception relating to "contract rights".

---

1. The court cited Dioguardi v. Durning, 2 Cir., 139 F.2d 774, 775: "It would seem, however, that he has stated enough to withstand a mere formal motion, directed only to the face of the complaint, and that here is another instance of judicial haste which in the long run makes waste."