**Solon B. CLARK, Jr., and Geraldine A. Clark, husband and wife, and Related Cases, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 13866.**

United States Court of Appeals, Ninth Circuit.

Dec. 29, 1954.

---

Solon B. Clark, Jr., A. C. Allen, Samuel B. Lawrence, Raymond G. Brown,

**448**

Gerald J. Meindl, Irving Rand, Portland, Or., for appellants.

Warren E. Burger, Asst. Atty. Gen., Massillon M. Heuser, John J. Finn, Attys., Dept. of Justice, Washington, D. C., C. E. Luckey, U. S. Atty., Eugene, Walker Lowry, Sp. Asst. to Atty. Gen., for appellee..

Before ORR and POPE, Circuit Judges, and WALSH, District Judge.

ORR, Circuit Judge.

In the year 1948 flood waters in great volume flowed down the Columbia River. This volume of water generated sufficient force to cause a break in an embankment protecting the town of Vanport, Oregon, a large housing project, with the result that the town was inundated and substantial property damage was sustained. In addition, fourteen lives are reputed to have been lost. Some of the residents suffering loss took the position that the United States, because of the carelessness and negligence of certain of its agents and agencies, was liable to them in damages. They brought suit to recover under the Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq., in the United States District Court for Oregon. That Court found that the United States was not liable. We are asked to reverse.

Appellants make several contentions, one being that the Corps of Engineers of the United States Army, hereafter Engineers, was negligent in failing to perform a duty owed the residents of Vanport; another, that the Housing Authority of Portland, an alleged agency of the United States, was negligent; and, also, liability of the United States because of negligence of certain railroads. The United States, some twenty days prior to the flood, had taken technical possession of railroads which owned and maintained the embankment which failed. Appellants claim that these railroads thus became agencies of the United States, and that because of their alleged negligence, the United States became liable to the Vanport residents.

The Trial Court made extensive findings in these cases and wrote two opinions which appear at 13 F.R.D. 342, and at 109 F.Supp. 213. All phases of this case are fully developed in the excellent opinion of the Trial Court. A reference thereto for a full statement of the case enables us to shorten our statement of details and of the findings of the Trial Court.

Vanport is a large housing project built at the expense of the United States upon land acquired by it during World War II for the purpose of providing housing for employees of Kaiser shipyards located in or near Portland, Oregon. The project was leased by the United States to the Housing Authority of Portland, hereafter H.A.P., which continued to manage the property after the war and until it was destroyed by the flood.

The town is located on low land adjament to the Columbia River within Peninsula Drainage District No. 1, a municipal corporation organized under Oregon law for drainage and flood protection purposes. Drainage District No. 1 is surrounded by four embankments; on the north and south by embankments first constructed by the District and later rebuilt by the Engineers; on the east by an embankment which supports an Oregon State Highway known as Denver Avenue and separates the District from Drainage District No. 2; on the west by an embankment consisting of two railroad fills and a highway fill joined together to constitute a single structure. In late May, 1948, Vanport was surrounded by high water on three sides, the north, south and west. There was no water on the east side because Peninsula Drainage District No. 2 is protected by its own embankment system.

As high water approached District No. 1 in late May, 1948, flood preparation measures, in which numerous public and private agencies participated, were taken. Flood fighting materials and equipment and a labor supply were placed in readiness. The levees were systematically patrolled by both the Vanport pre-

cinct of the sheriff's office and H.A.P. The western embankment was also patrolled by maintenance crews of the Spokane, Portland and Seattle Railway Company, hereafter S. P. & S., whose main line was constructed on that embankment. In addition, informal inspection trips were made by representatives of H.A.P., the Drainage District, the Railroad Companies, and the Engineers. These inspections continued to the moment of eventual failure of the embankment. No defect was detected which indicated imminence of an embankment failure. Newspapers carried announcements that Vanport was safe. Telephone operators at H.A.P. relayed similar information to Vanport residents.

On Saturday afternoon, May 29th, the Red Cross Disaster Committee called a meeting which was attended by various Red Cross officials and by the special representative of the Oregon Governor, County officials and a representative of H.A.P. No representative of the Engineers attended this meeting. The evacuation of Vanport as a precautionary measure was discussed. It was agreed that evacuation was unnecessary at that time. It was decided, however, to prepare a circular to be given to the residents of Vanport. The circular was prepared by an employee of H.A.P. and distributed to the residents early Sunday morning. It read as follows:

"To the Residents of Vanport

"Read this carefully and keep it in case you need to refer to it.

"The flood situation has not changed since the prediction made last Thursday that the highest water would come next Tuesday, that the dikes were high enough and strong enough to withstand the crest, and that barring unforeseen developments Vanport is safe.

"However, the Housing Authority is taking every possible precaution to protect the personal safety of every Vanport resident in the event of emergency. The plan outlined is as follows:

"1. In the event it becomes necessary to evacuate Vanport, the Housing Authority will give the warning at the *earliest possible moment,* upon the advice of the U. S. Army Engineers. Warning will be by siren and air horn blown continuously.

"2. Sound trucks will give instructions on what to do. Those instructions briefly are as follows:

"A. Don't get panicky! You have plenty of time. Take such valuables as money, papers, jewelry. Wear serviceable clothing, and pack essential personal belongings and a change of clothing in a small bag. *Do not try to take too much.* Turn off lights, stoves, close windows, lock the door.

"B. If you have a car observe traffic regulations. Carry as many people as you can.

"C. If you haven't a car go toward Denver Avenue, or the Railroad Embankment, whichever is closest. Portland Traction buses will operate in the project or on Denver Avenue, depending on conditions, to take persons to places of emergency shelter. Upon arrival at shelter, the Red Cross will assume responsibility for registration and for emergency food, shelter, and clothing. The county health department will provide emergency medical care. Cases of sickness, old age, or disability where special assistance will be necessary in case of evacuation should be reported now to the Sheriff's Office. Such cases, if they can conveniently do so, are encouraged to leave Vanport now for the next few days.

"Also, persons who *for any reason* are leaving Vanport to be away for several days are urged to register at the Sheriff's Office before leaving. This will help to answer inquiries from anxious friends and relatives who do not know where you are.

"Remember:

"Dikes Are Safe At Present

"You Will Be Warned If Necessary

"You Will Have Time To Leave

"Don't Get Excited!"

On Sunday morning, May 30th, an S. P. & S. section foreman discovered some settling of the track. Trains were ordered to proceed slowly, but it was not considered necessary then or at any time before the break to halt traffic. Railroad employees and others were on the western embankment both Sunday morning and afternoon.

What happened on Sunday afternoon is recounted in the District Court's Finding of Fact No. 6, as follows:

"6. At approximately four thirty on Sunday afternoon, May 30, 1948, and when the flood water in the Columbia River stood at an elevation of 30.8 feet, m. s. l., the western embankment at Peninsula Drainage District No. 1 suddenly failed. The failure resulted from a break in the embankment rather than overtopping. The failure was so rapid and unexpected that railroad employees who were inspecting the embankment were precipitated into the water. Within an hour the whole Vanport area was flooded. The houses in Vanport were damaged beyond repair and personal property belonging to the Vanport residents, including property of the plaintiffs, was destroyed by water damage as a direct result of the break. Fourteen lives are reputed to have been lost but about 16,000 people were evacuated safely."

As heretofore pointed out, appellants seek to hold the United States accountable for the alleged negligence of three groups:

1. The Railroads, at the time under Government seizure, with negligent maintenance and inspection of the embankment over which the trains ran;

2. The Engineers, because of the alleged negligent manner in which it participated in the flood fight and the giving of false assurances of safety;

3. H.A.P., because it undertook to and did give false assurances of safety to Vanport residents.

Appellants produced at the trial an expert witness who testified that he would have required more information than that possessed by the several agencies to be enabled to express an opinion as to the safety of Vanport. Appellants point to evidence in the record which they claim demonstrates that the embankment which failed was not in fact properly patrolled and inspected. They also rely on evidence to the effect that the railroad embankment was covered with brush and trees which prevented proper inspection. They cite an Engineers' regulation providing for the removal of wild growth from flood control structures constructed by the United States for local flood protection. They also rely upon the statements of an H.A.P. employee who was in charge of the pumping equipment in the Drainage District and who testified that he had observed unusually muddy water in the drainage ditch and had so informed his immediate superior.

The Engineers' regulation to which plaintiffs refer does not apply to the western embankment since that embankment was constructed by the railroads and not by the United States. The United States developed evidence to the effect that numerous competent and experienced men inspected the embankment not long before the failure and that not one of them observed any thing indicating that Vanport was in danger. The United States also introduced the testimony of five highly qualified expert witnesses each one of whom testified that assuming stipulated facts with regard to the western embankment and its history, he would not have expected failure and would not have recommended evacuation.

An extensive investigation conducted after the flood failed to reveal the cause of the failure. Witnesses testifying as to the cause could do no more than specu-

late. The western embankment, through which the break occurred, was substantially completed by 1918 and prior to 1948 had withstood numerous floods. It was higher, broader, and less subject to water pressure that the other embankments and was thought to be better consolidated because of the pressure of the weight of the railroad trains which traversed it. Much evidence was to the effect that the sudden failure of an embankment of the size, age, and past performance of the western embankment was both unprecedented and unforeseeable.

The Trial Court found as a fact that there was no lack of due care in connection with the failure of the embankment in the following terms: "No act or omission of the United States, the Corps of Engineers, the Housing Authority of Portland, the railroads and agencies, officers or employees of any of them in connection with the flooding of plaintiff's property was without due and ordinary care. No act or omission of any such person or entity above named was the cause of the flooding of the property of the plaintiff." This general finding is buttressed by more specific and detailed findings of proper care on the part of each of the various persons and agencies through which appellant seeks to charge the United States with liability. With regard to the bulletin prepared by an employee of H. A. P. and distributed to the Vanport tenants the Trial Court found as a fact that: "No negligence had been proved in connection with the bulletin or the statements made in it." The evidence clearly supports these findings.

Appellants argue that the doctrine of *res ipsa loquitur* should be applied. Assuming that under the law of Oregon *res ipsa loquitur* has application to this case, the trial court found the evidence sufficient to rebut any presumption of negligence which that doctrine might create. Cf. McPherson v. Oregon Trunk Railway, 1940, 165 Or. 1, 102 P.2d 726.

■ We have, in considering the question of negligence, assumed for that purpose only, that the persons and agencies through whom appellants seek to charge the United States owed a duty to appellants and the United States would be liable for their negligent actions. Our sustaining of the Trial Court's findings of no negligence could well be dispositive of the case. We think it advisable to go further and consider certain legal principles which persuade us that appellants cannot recover.

■ Appellants argue that because the railroads, which had built, owned, and operated the western embankment, were on May 30, and had been since May 10, 1948 under Government seizure in connection with a labor dispute, they thereby became federal agencies within the meaning of the Tort Claims Act, 28 U.S.C.A. § 2671. The Trial Court found that the seizure of the railroad was technical and fictional, for the limited purpose of effectuating orders of the sovereign regarding labor relations, and was not intended to and did not subject the United States to suit because of the actions of the railroad's or their employees. In this connection the Trial Court points out that one of the general orders issued during the seizure provided that the railroads would themselves remain subject to suit. General Order No. 4, May 17, 1948, 13 F.R.D. 342, 376. We think the Trial Court was clearly correct in its conclusion. The railroads were not federal agencies within the purview of the Tort Claims Act and no liability can attach to the United States through any act or omission of the railroads or their employees.

■ As to the liability of the United States because of the alleged negligence of the Engineers, we think a provision of 33 U.S.C.A. § 702c bars recovery. That section places certain conditions upon federal expenditures in aid of flood control and provides that: "No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place". Appellants assert that this provision applies only to flood con-

trol aid on the Mississippi; however, supplemental acts authorizing expenditures on other rivers incorporate this provision. 33 U.S.C.A. § 701e. We find no merit in appellants' contention that the Tort Claims Act repealed this provision by implication. The provision of 33 U.S.C.A. § 702c barring liability "from or by floods or flood waters" expresses a policy that any federal aid to the local authorities in charge of flood control shall be conditioned upon federal non-liability. To base recovery here on any act or omission of the Engineers in assisting in the fight against this flood would run counter to the policy thus expressed. See National Mfg. Co. v. United States, 8 Cir., 1954, 210 F.2d 263, 270–275, certiorari denied, 347 U.S. 967, 74 S.Ct. 778.

Neither the United States as landowner nor H.A.P. as landlord owed the tenants any flood fighting duties. The gist of appellants' case against the United States by virtue of the action of H.A.P. and its employees is that H.A.P. undertook to inform and advise its tenants and that it negligently carried out this undertaking and issued false assurances of safety. Thus the charge against the United States through H.A.P. is basically one of negligent misrepresentation. In this branch of their case appellants rely heavily upon the bulletin distributed to the tenants on the morning of the flood. The bulletin stated that "barring unforeseen developments Vanport is safe." Inasmuch as the evidence at the trial indicates that what transpired on Sunday afternoon was actually unforeseen and in the exercise of due care could not have been *foreseen* that statement in the bulletin was accurate. Moreover, the bulletin cannot be correctly read as an assurance of safety.

■■ Even though contrary assumptions be indulged, there could be no recovery for negligent misrepresentations of H.A.P. or its employees. 28 U.S.C.A. § 2680(h) exempts from the coverage of the Tort Claims Act any claim arising out of misrepresentation. Misrepresentation as used in this section has been held to include negligent as well as intentional misrepresentation. Jones v. United States, 2 Cir., 1953, 207 F.2d 563, certiorari denied, 347 U.S. 921, 74 S.Ct. 518; National Mfg. Co. v. United States, 8 Cir., 1954, 210 F.2d 263, 275–276, certiorari denied, 347 U.S. 967, 74 S.Ct. 778. And in addition it appears that under Oregon law no recovery may be had for negligent misrepresentation. Medford National Bank v. Blanchard, 1931, 136 Or. 467, 299 P. 301; Horner v. Wagy, 1944, 173 Or. 441, 458–59, 146 P.2d 92; Perrigo v. Boehm, 1952, 194 Or. 507, 514, 242 P.2d 791. There is no factual or legal basis for recovery based upon the alleged acts of H. A. P. or its employees, hence, the objection to the finding of the Trial Court that H. A. P. should be considered a federal agency for purposes of the Tort Claims Act need not be reviewed.

The Government has raised other interesting defenses. It contends that the activities by reason of which appellants seek to find the United States liable fall within the discretionary function exception to the coverage of the Tort Claims Act as that provision has been interpreted by the Supreme Court in Dalehite v. United States, 1953, 346 U.S. 15, 73 S.Ct. 956. It further contends that these activities are not actionable under general principles of tort law since they were governmental and performed at a time of public peril. We find it unnecessary to express our opinion on these points since we have disposed of the case on other grounds.

Affirmed.