Raymond L. STOVER et al., Appellants,

v.

UNITED STATES of America, Appellee.

No. 18275.

United States Court of Appeals Ninth Circuit.

April 7, 1964.

Rehearing Denied June 9, 1964.

Goldstein, Barceloux & Goldstein, P. M. Barceloux, Burton J. Goldstein, and Reginald M. Watt, Chico, Cal., and Perkins, Carr & Anderson, Sacramento, Cal., for appellants.

Cecil F. Poole, U. S. Atty., and William B. Spohn, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before CHAMBERS and DUNIWAY, Circuit Judges, and TAYLOR, District Judge.

CHAMBERS, Circuit Judge.

Stover is one of 164 plaintiffs from the vicinity of Yuba City, California, who suffered damage when waters from the Feather River or its tributaries ran over their lands late in December, 1955. They allege this happened because some federally constructed levees broke. The trial court has held that 33 U.S.C. § 702c,[1] on the facts here, insulates the United States from liability. We affirm.

Apparently in the summer of 1955 a flood control project under way for many years, on the Feather River and its tributaries, the Yuba and the Bear, was completed. At that time an overflow escape at the place called Hamilton Bend was sealed off. Had not the Hamilton Bend escape been closed, the levees would have not broken and the plaintiffs would not have been injured, it is alleged.[2] Apparently the water would have flooded other lands which historically had been

---

1. 33 U.S.C. § 702c, in pertinent part, provides:

"No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place * * *"

The language originated in an act of Congress affecting the Mississippi River. 45 Stat. 535.

2. Plaintiffs also contended there was negligent construction at the points of the breaks and negligent maintenance of the channel and levees. Two breaks several miles apart occurred on the right bank and one break on the left bank. Stover himself apparently suffered from the break called Gum Tree on the right bank. Other breaks were at the Western Pacific Interceptor Canal levee on the right bank and one at Nicolous on the left bank. All breaks resulted from the runoff from the same storm.

subject to flooding. Plaintiffs, in effect, say that what the new system actually accomplished was to protect someone else by injuring plaintiffs.

The Feather River and its tributaries had natural streams and natural banks. The levees were set back and away from the banks. At the time of the floods, the waters would leave the banks and were supposed to be contained by the levees.

The trial court had a trial on the applicability of § 702c.

In a pre-trial order the court ruled that 33 U.S.C. § 702c "applies to all floods and flood waters which result in whole or in part from unusual or extraordinary precipitation" and defined "unusual or extraordinary" as meaning "conditions which, in the light of experience, would not be anticipated by a normal person using ordinary care." Then it went on to say § 702c "does not apply to 'man-made floods' which result solely from negligent acts." Then the term "man made flood" was defined as "a flood which is created solely by the construction or fabrication of a barrier which, but for the barrier, would not have been impounded."

In its findings of fact the court said: the waters were unusual and extraordinary. For amplification of the court's findings see the court's opinion, Stover v. United States, D.C., 204 F.Supp. 477. Evidence of negligent construction was excluded as not being within the issues of the trial on the applicability of § 702c.

If the court adhered to its original definition, we believe it found that the rains and runoff were not foreseeable. If that be the case, would one even reach the applicability of § 702c? Under general negligence is there ever liability for the thing that cannot reasonably be foreseen by the ordinary prudent person who plans waterways?

■■ We hold that 33 U.S.C. § 702c is an immunity statute covering even ordinary negligent construction or maintenance of flood works and that to hold otherwise would be a repudiation of our Clark case, Clark v. United States, 218 F.2d 446. True, as appellants point out, § 702c was only one of the legs on which Clark stood, and one of the other legs was sufficient for the case. But we cannot call it pure dicta. If it was half dicta, we believe it good dicta. Also, the leading case, National Manufacturing Co. v. United States, 8 Cir., 210 F.2d 263, holds § 702c to be an immunity statute. And, it is a well reasoned case. We affirm on the ground, negligence or no negligence, § 702c precludes recovery here.

Appellants say the section applies to natural but not to man made floods. They rely heavily on the draft form of the 1928 Flood Control Bill out of which present § 702c emerged. Also, they rely strongly on Congressional colloquy at the time of the adoption of the 1928 Flood Control Bill. But all the colloquy just cannot overcome plain language. And there really would not be any reason to legislate on damage caused purely by nature.

■ Appellants finally contend that if 33 U.S.C. § 702c bars a suit for damage caused by negligent federal planning of a flood control project, then the section is unconstitutional as causing a taking without just compensation, proscribed by the Fifth Amendment.

■ An isolated injury is not considered a taking. Prior to the Federal Tort Claims Act if one was hit by a negligently driven post office truck and even one's life was "taken," there seems to have been no authority that that was a taking requiring compensation under the Fifth Amendment.

There is no pleading that the construction of the Feather River system levees has resulted in a permanent taking of any right on or over the plaintiffs' land. It is not framed at all in the terms of United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206, the airplane noise case. The claims so far as we have them in the record would seem to exceed

the present maximums for district courts under the Tucker Act.[3]

The appellants would have us abolish federal governmental immunity (at least in cases like this) and rely on recent state decisions which do it. The state decisions do not yet say that a legislature cannot establish governmental immunity.

It may be that morally and financially the plaintiffs have been grievously wronged by their government; that in protecting others it injured them. It is not committed to us to remake the statute. That the limitation should happen to be in the statute is understandable. Appropriations for flood control do not come automatically. Dozens of congressmen have no flood control problems. Perhaps, as a condition to their consent to flood control appropriations, they impose such limitations as § 702c.

Congress can change § 702c and the Federal Tort Claims Act if it wants to do so. We cannot.

Judgment affirmed.

### On Petition for Rehearing

PER CURIAM.

The petition for rehearing is denied.

CHAMBERS, Circuit Judge (concurring).

In their petition for rehearing, appellants challenge the statement in our opinion which is as follows:

"Appellants finally contend that if 33 U.S.C. § 702c bars a suit for damage caused by negligent federal planning of a flood control project, then the section is unconstitutional as causing a taking without just compensation, proscribed by the Fifth Amendment."

They say:

"Appellants' contention with respect to the constitutional question was that Section 702c, if construed as an immunity statute, would be unconstitutional as a *denial of due process of law* as it would destroy a right without providing a reasonable substitute."

Whichever way we state it, due process of law or taking without just compensation, we are in the Fifth Amendment and we end up the same place. And that is, short of a taking, historically on a tort one has had to have the consent of the federal government to sue it.