Agnes LUNSFORD, as special administratrix mf the Estates of Theophil Gall and Alice H. Gall, Deceased, et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. CIV 75–5031.

United States District Court, D. South Dakota, W. D.

Aug. 30, 1976.

Horace R. Jackson, of Lynn, Jackson, Shultz, Ireland & Lebrun, Rapid City, S. D., and Sam W. Masten, Canton, S. D., for plaintiffs.

William F. Clayton, U. S. Dist. Atty., D. S. D., Sioux Falls, S. D., Thomas J. Whalen and Lawrence Mentz, of Condon & Forsyth, New York City, and J. Charles Kruse, Dept. of justice, Washington, D. C., for defendant.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

This Federal Tort Claims action arises from the disastrous flood which occurred in Rapid City, South Dakota, on June 9, 1972, resulting in 238 deaths. The plaintiffs seek to assert claims on behalf of themselves and a class of unnamed persons who suffered personal injury and property damage as a result of the flood. Presently pending before the court are the following motions:

1. Defendant's motion to dismiss the class action;

2. Plaintiffs' motion to strike certain portions of the answer;

3. Defendant's motion to dismiss for lack of subject matter jurisdiction;

4. Defendant's motion to dismiss for failure to state a claim upon which relief can be granted.

Each motion will be dealt with separately.

## MAINTENANCE AS A CLASS ACTION

The government contends that the present suit cannot be maintained as a class action, since the unnamed members of the class have not presented administrative claims. The administrative claim requirement of the Federal Tort Claims Act is found at 28 U.S.C. section 2675(a), which provides:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *unless the claimant shall have first presented the claim to the ap-propriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.* (Emphasis added).

The procedure for presenting claims under section 2675(a) is set out in 28 C.F.R. Chapter I, Part 14 (1975). The government's assertion is that 28 C.F.R. sections 14.2(a), 14.3(a) and 14.3(c) have not been complied with. These regulations provide as follows:

14.2 Administrative claim; when presented.

(a) For purposes of the provisions of section 2672 of Title 28, United States Code, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident accompanied by *a claim for money damages in a sum certain* for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident. If a claim is presented to the wrong Federal agency, that agency shall transfer it forthwith to the appropriate agency. (Emphasis added).

14.3 Administrative claim; who may file.

(a) A claim for injury to or loss of property may be presented by the owner of the property, his duly authorized agent or legal representative.

(b) A claim for personal injury may be presented by the injured person, his duly authorized agent, or legal representative.

(c) A claim based on death may be presented by the executor or administrator of the decedent's estate, or by any other person legally entitled to assert such a claim in accordance with applicable State law.

Plaintiffs maintain that their claim on behalf of the class meets the requirements of section 14.3, inasmuch as they will become the agents of the unnamed class members upon certification of the class, and each member of the class who does not "opt out" will in effect be ratifying the acts of the named plaintiffs as their agents. I am

unable to accept this reasoning, as it appears to be somewhat circular. There could be no class absent the presentation of a claim by its agent, and yet the certification of the class is the act which creates the agency status. It appears to the court that plaintiffs' claim of compliance with the regulations is not well founded.

■ A far more serious question is presented by plaintiffs' claim that the regulations in question are in excess of statutory authority if read to preclude class actions on behalf of parties who have not submitted administrative claims. The absolute requirement of an administrative claim was the result of the 1966 amendments to the Federal Tort Claims Act. As the court noted in *Meeker v. United States,* 435 F.2d 1219 (8th Cir. 1970):

> Congressional intent in enacting the requirement of exhaustion of administrative remedies, as evinced by the legislative history of the 1966 amendment, was to improve and expedite disposition of monetary claims against the Government by establishing a system for prelitigation settlement, to enable consideration of claims by the agency having the best information concerning the incident, and to ease court congestion and avoid unnecessary litigation. S.Rep. 1327, 89th Cong., 2nd Sess., U.S.Code Cong. & Admin.News 1966, p. 2515.

435 F.2d at 1222–23. The question of whether allowing class actions would hinder the realization of these goals is not easily resolved.

As regards the requirement that a claim be stated in a sum certain, it is clear that the regulation represents a reasonable attempt to expedite prelitigation settlement. As the court noted in *Caton v. United States,* 495 F.2d 635 (9th Cir. 1974):

> Thus after the 1966 amendment "an amount certain" in the claim was not needed to identify the claim as one subject to administrative settlement by the agency, except that the prior written approval of the Attorney General or his designee was required when the claim exceeded $25,000. There still remained

the need for a claim to state "a sum certain" to identify the claim which might require Attorney General approval and to identify the claim which, if settled for $25,000 or less, would be paid out of available appropriations.

> Secondly, such identification was needed in connection with insurance coverage that might exist . . . for the governmental agency activity.

> Finally, the requirement of the inclusion of "a sum certain" in the claim must be read with the language of 28 U.S.C. section 2675(b): "Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, *except where the increased amount is based upon newly discovered evidence* not reasonably discoverable at the time of presenting the claim to the federal agency, *or upon allegation and proof of intervening facts,* relating to the amount of the claim." (Emphasis added). It is apparent that without the inclusion of "a sum certain" in the claim to the agency, the above provisions of 28 U.S.C. section 2675(b) would be meaningless.

495 F.2d at 637–38.

Nor does the requirement that each claimant present an individual claim strike the court as unreasonable. It would indeed be difficult for an administrative agency to adequately assess a claim if the factors surrounding the claim were not presented on an individual basis.

Plaintiffs maintain, however, that the decision in *Executive Jet Aviation, Inc. v. United States,* 507 F.2d 508 (6th Cir. 1974), dictates a contrary result. In *Executive Jet* the court determined that failure to show insurers, who were real parties in interest, as joint claimants did not bar their claim, despite noncompliance with the pertinent regulations. The court emphasized three factors which were central to its decision:

1. The addition of the insurers did not "take the government by surprise;"

2. The addition of the insurers did not hamper the government's ability to prepare its defense; and

3. The addition of the insurers would not have been likely to alter the government's decision to deny the claim, since the government was asserting various defenses to liability.

I am not convinced that the first and second reasons noted above are a sufficient basis for avoiding the administrative regulations, as they bear on the ability of the government to defend the suit. The purpose of the administrative exhaustion requirement was to facilitate settlement and ease court congestion, not to insure that the government could adequately litigate tort claims against the various federal agencies. I am more troubled by the third rationale presented in *Executive Jet*. I suspect that the government would not have settled any of the claims stemming from the Rapid City flood, since the theory of liability is somewhat novel. Regardless, I am unwilling to allow avoidance of the regulations on such a tenuous, and somewhat speculative basis. Accordingly, the court determines that the unnamed members of the proposed class have failed to comply with valid administrative regulations. What then is the effect of such noncompliance?

■ As a general matter, the United States enjoys sovereign immunity, except as it consents to be sued. *United States v. Sherwood*, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). In giving such consent, the United States may attach whatever conditions and limitations it chooses. *Peterson v. United States*, 428 F.2d 368 (8th Cir. 1970). Although the waiver of sovereign immunity embodied in the Federal Tort Claims Act is cast in broad and sweeping terms, see *United States v. Yellow Cab Co.*, 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523 (1951), the limitations and conditions of the waiver are to be strictly observed. *Soriano v. United States*, 352 U.S. 271, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957); *Childers v. United States*, 442 F.2d 1299 (5th Cir. 1971). The necessity of strictly observing the conditions of the United States' consent to be sued stems, at least in part, from the fact that these conditions are considered to be jurisdictional. *Molinar v. United States*, 515 F.2d 246 (5th Cir. 1975); *Melo v. United States*, 505 F.2d 1026 (8th Cir. 1974); *Bialowas v. United States*, 443 F.2d 1047 (3rd Cir. 1971).

The problem presented by a class action involving unnamed plaintiffs who have not filed an administrative claim is that these unnamed plaintiffs have actually failed to comply with a jurisdictional prerequisite. In this sense, the case at hand differs from *Petition of Gabel*, 350 F.Supp. 624 (C.D.Cal. 1972), a case involving an airplane collision in which a class action under the Federal Tort Claims Act was allowed. It appears that all of the members of the claimant class in *Gabel* had complied with 28 U.S.C. section 2675. See *Petition of Gabel, supra* at 630. The unnamed plaintiffs in this case have not complied with section 2675, and at least two courts have dismissed class actions in similar circumstances. See *Commonwealth of Pennsylvania v. National Association of Flood Insurers*, 520 F.2d 11 (3rd Cir. 1975); *Harrigan v. United States*, 63 F.R.D. 402 (E.D.Pa.1974).

■ The rationale for refusing to entertain a class action involving unnamed plaintiffs under the Federal Tort Claims Act is bottomed on the prohibition against expanding federal court jurisdiction by rule. "These rules shall not be construed to extend or limit the jurisdiction of the United States district courts or the venue of actions therein." Fed.R.Civ.P. 82. Since unnamed plaintiffs could not comply with 28 U.S.C. section 2675(a) and the pertinent regulations, the court would be without jurisdiction over them. Allowing this group of claimants to proceed by class action would extend the court's jurisdiction through a procedural device, namely Rule 23(b)(3). In many ways, the cases of *Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), and *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), present an apt and illustrative analogy. Both cases involved class actions under Fed.R.Civ.P. 23(b)(3). This type of class action was formerly denominated a "spurious" class action, in that each member presents a separate and distinct claim. In

*Snyder,* the Supreme Court held that the 1966 amendments to Rule 23 did not change the previous rule that separate and distinct claims, even though part of a class action, could not be aggregated to attain the jurisdictional amount required for federal court actions. In *Zahn,* the Court ruled that a class action cannot be maintained in federal court unless each member of the class meets the jurisdictional amount requirements; merely having the named representatives of the class meet jurisdictional requirements was deemed insufficient. Thus, it is clear that Rule 23, permitting class actions, cannot be utilized to avoid the jurisdictional prerequisites required of each member of the class.

■ Plaintiffs maintain, however, that jurisdictional requirements need not be strictly adhered to when the issue is merely procedural and does not involve the substance of a claim. The court's attention has been directed to a line of cases involving Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e–5(e). These cases, actually stemming from *Oatis v. Crown Zellerbach Corp.,* 398 F.2d 496 (5th Cir. 1968), have established the rule that, although bypassing the Equal Employment Opportunity Commission procedures would normally be a jurisdictional defect, a class action under Title VII will be allowed if at least one named plaintiff has followed EEOC procedures. *Oatis v. Crown Zellerbach Corp., supra; Miller v. International Paper Co.,* 408 F.2d 283 (5th Cir. 1969).

I am convinced, however, that this line of cases does not represent a proper analogy. First, there is some indication that these class actions have been allowed because "[r]acial discrimination is by definition a class discrimination . . . ." *Otis, supra* at 499. See also *Rodriguez v. East Texas Motor Freight,* 505 F.2d 40 (5th Cir. 1974). Secondly, and more importantly, the rule is viewed as the effectuation of a strong Congressional policy aimed at correcting past discrimination. See *Hackley v. Roudebush,* 520 F.2d 108 (D.C. Cir. 1975); *Franks v. Bowman Transportation Co.,* 495 F.2d 398 (5th Cir. 1974), reversed on other grounds,

424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976). Although the waiver of sovereign immunity embodied in the Federal Tort Claims Act may represent an equally strong congressional policy, I think at least two factors distinguish federal tort claims from Title VII suits. First, federal tort claims actions are not inherently class suits. Secondly, the 1966 amendments to the Federal Tort Claims Act are indicative of a strong congressional intent calling for prelitigation settlement of tort claims against the United States. Under the Federal Tort Claims Act, the agency handling the claim is, in a sense, a party to any ultimate suit, and these agencies have been given broad authority to settle claims against them. By way of contrast, in a Title VII suit, the EEOC is in no sense a "party defendant," and cannot settle claims for the defendant. Thus, I am unwilling to waive the requirements of 28 U.S.C. section 2675 and its accompanying regulations.

Since the administrative exhaustion requirement of 28 U.S.C. section 2675(a) has not been met, this court has no jurisdiction over the unnamed members of the class. *Melo v. United States,* 505 F.2d 1026 (8th Cir. 1974); *Best Bearings Co. v. United States,* 463 F.2d 1177 (7th Cir. 1972); *Bialowas v. United States,* 443 F.2d 1047 (3rd Cir. 1971). Accordingly, this action cannot be maintained on behalf of unnamed members of the class who have presented no administrative claim. *Commonwealth of Pennsylvania v. National Association of Flood Insurers,* 520 F.2d 11 (3rd Cir. 1975); *Harrigan v. United States,* 63 F.R.D. 402 (E.D.Pa.1974).

The court expresses no opinion as to the propriety of certifying the class under Fed. R.Civ.P. 23, as I do not deem it necessary to reach that issue. The motion to dismiss the class action is granted.

## PLAINTIFFS' MOTION TO STRIKE CERTAIN DEFENSES

Plaintiffs have moved to strike six defenses asserted by the United States. The defenses tested by this motion are:

1. That the complaint fails to state a claim upon which relief can be granted (First Defense);

2. That the plaintiffs failed to comply with 28 U.S.C. section 2675, which requires the filing of a claim with the appropriate administrative agency (Second Defense);

3. That plaintiffs' cause of action is barred by the statute of limitations found at 28 U.S.C. section 2401(b) (Fifth Defense);

4. That the United States is immune from any liability for flood damage by virtue of 33 U.S.C. section 702c (Eighth Defense);

5. That no liability can attach to the United States since the acts complained of were those of an independent contractor (Ninth Defense); and

6. That this court lacks jurisdiction because the acts complained of were those of a Government employee exercising due care in the execution of a statute or regulation (28 U.S.C. section 2680(a)) (Twelfth Defense).

■ Plaintiffs' motion is made pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, which provides:

Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon him or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Initially, the government contends, and plaintiffs concede, that the motion to strike was not made within the 20 day time limit prescribed by Rule 12(f). Rule 12(f), however, does allow the court to strike material from a pleading on its own initiative at any time, and the court will consider plaintiffs' motion on that basis. See *Stonybrook Tenants Association, Inc. v. Alpert*, 29 F.R.D. 165 (D.Conn.1961); Wright & Miller, 5 Federal Practice and Procedure pp. 784–86 (1969).

■ Plaintiffs' motion to strike is apparently based on the contention that the pleadings in question do not present a sufficient defense. The motion to strike is not a favored motion, at least in part because it is a drastic remedy and is often dilatory. See *Vernon J. Rockler & Co., Inc. v. Minneapolis Shareholders Co.*, 69 F.R.D. 1 (D.Minn. 1975); *Sample v. Gotham Football Club, Inc.*, 59 F.R.D. 160 (S.D.N.Y.1973). The general standard by which a defense is tested is whether "the defense is sufficient as a matter of law or (whether) it fairly presents a question of law or fact which the court ought to hear." Moore & Lucas, 2A Moore's Federal Practice p. 2437 (1975). Several factors may bear on this determination:

1. Is the defense unrelated to plaintiffs' claims?

2. Is the defense so clearly legally insufficient as to be unworthy of the court's consideration?

3. Is there a factual question present?

4. Is the legal question raised in dispute?

5. Could the defense succeed under any set of circumstances?

6. Would failure to grant the motion prejudice the moving party?

See *Vernon J. Rockler & Co., Inc. v. Minneapolis Shareholders Co.*, 69 F.R.D. 1 (D.Minn.1975); *United States v. Articles of Food, etc.*, 67 F.R.D. 419 (D.Idaho 1975); *Coca-Cola Co. v. Howard Johnson Co.*, 386 F.Supp. 330 (N.D.Ga.1974); *Systems Corp. v. American Telephone & Telegraph Co.*, 60 F.R.D. 692 (S.D.N.Y.1973); *Sample v. Gotham Football Club, Inc.*, 59 F.R.D. 160 (S.D.N.Y.1973); and *Zamora v. Massey-Ferguson, Inc.*, 336 F.Supp. 588 (S.D.Iowa 1972).

■ The motion to strike the Second and Fifth defenses asserted in defendant's answer raises both legal and factual questions. There is a legal question as to whether the administrative regulations involved are valid under 28 U.S.C. section 2675. There are also factual questions as to who must comply with these regulations, and in what manner compliance may be had

if the regulations are in fact valid. The motion to strike the Second and Fifth defenses is denied.

The Ninth defense raises the question of whether the United States can be held liable for the acts of an independent contractor. This raises the obvious factual question of whether the acts or omissions complained of were those of an independent contractor. Plaintiffs assert, however, that the United States negligently failed to monitor the work of its contractor, and further, that there was a nondelegable duty of supervision on the part of the United States. I feel that the Ninth defense raises a substantial disputed question of law, and thus, the motion to strike the Ninth defense is denied.

The Twelfth defense is a statutory defense involving 28 U.S.C. section 2680(a), which provides that no claim may be brought "based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation . . . ." The mere fact that plaintiffs' complaint alleges negligence is certainly not conclusive on the issue of "due care," and the motion to strike the Twelfth defense is denied.

The First defense is a general denial, asserting that plaintiffs have not stated a claim upon which relief can be granted. There is little doubt in my mind that this defense raises substantial disputed legal questions, and the motion to strike will be denied.

■ In my opinion the motion to strike the Eighth defense presents the most serious legal question. The United States claims that it enjoys immunity from any liability for flood damages on the basis of 33 U.S.C. section 702c, which provides:

No liability of any kind shall attach to or rest upon the United States for any

damage from or by floods or flood waters at any place . . . .

This provision was enacted as part of the Flood Control Act of 1928, 45 Stat. 534, and has been carried forward in later flood control statutes. Although the congressional history behind this provision is not particularly enlightening, see Graci v. United States, 456 F.2d 20, 23 (5th Cir. 1971), it is generally conceded that the primary purpose of the immunity provision was to avoid having flood damages added to the very substantial costs of the flood control projects contemplated. See Florida East Coast Railway Co. v. United States, 519 F.2d 1184, 1191 (5th Cir. 1975); Parks v. United States, 370 F.2d 92 (2nd Cir. 1966); Clark v. United States, 218 F.2d 446, 452 (9th Cir. 1954); National Manufacturing Co. v. United States, 210 F.2d 263, 270 (8th Cir. 1954). Although the United States enjoyed sovereign immunity at the time of section 702c's passage,[1] the intent of Congress was apparently to insure that the United States would not be held liable for flood damages merely because it had undertaken flood control projects. See National Manufacturing Co. v. United States, 210 F.2d 263, 271 (8th Cir. 1954). Interpretive problems have arisen, however, because the immunity is stated in very broad terms. Compare National Manufacturing Co., supra, with Graci v. United States, 456 F.2d 20 (5th Cir. 1971), and Peterson v. United States, 367 F.2d 271 (9th Cir. 1966).

The specific issue which this court must address is whether the immunity granted by section 702c extends to floods caused by negligence attributable to the United States, but not connected with any flood control activities.[2] The first cases involving this question resulted in very broad and literal interpretations of 702c. See, e. g., National Manufacturing Co. v. United States, 210 F.2d 263 (8th Cir. 1954); Clark v. United States, 218 F.2d 446 (9th Cir.

---

1. The Federal Tort Claims Act, 28 U.S.C. sections 2671–2680, was not passed until 1946.

2. It is well-settled that the Federal Tort Claims Act did not effect a wholesale waiver of the immunity granted by section 702c. National

Manufacturing Co. v. United States, 210 F.2d 263, 271 (8th Cir. 1954); Clark v. United States, 218 F.2d 446 (9th Cir. 1954); Ponderendolph v. Derry Township, 330 F.Supp. 1346 (W.D.Pa. 1971).

1954); *McClaskey v. United States*, 386 F.2d 807 (9th Cir. 1967); *Peerless Serum Co. v. United States*, 114 F.Supp. 662 (S.D. Mo.1953); *Villarreal v. United States*, 177 F.Supp. 879 (S.D.Tex.1959). The *National Manufacturing* decision, *supra*, by the Eighth Circuit Court of Appeals is usually recognized as the leading authority for this position. In that case, the court emphasized the congressional policy behind section 702c:

> Undoubtedly that absolute freedom of the government from liability for flood damages is and has been a factor of the greatest importance in the extent to which Congress has been and is willing to make appropriations for flood control and to engage in costly undertakings to reduce flood damages.

210 F.2d at 273. The court went on to state the scope of the immunity afforded by section 702c in very broad terms:

> The use of the word "from" in addition to "by" makes it clear that the bar against federal liability for damages is made to apply wherever floods or flood waters have been substantial and material factors in destroying or damaging property. The language used shows Congressional anticipation that it will be claimed after the happening of floods that negligence of government employees was a proximate cause of damages where floods or flood waters have destroyed or damaged goods. But the section prohibits government liability of "any kind" and at "any place". So that uniformly and throughout the country at any place where there is damage "from" or "by" a flood or flood waters in spite of and notwithstanding federal flood control works no liability of any kind may attach to or rest upon the United States therefor.

210 F.2d at 275. The Eighth Circuit also noted that section 702c had not been explicitly or impliedly repealed by the Federal Tort Claims Act. *National Manufacturing Co., supra* at p. 274.

It is important to note, however, that each decision [3] upholding the immunity granted by section 702c in literal terms involved negligence arising from the operation of a flood control project. This point is central to plaintiffs' case, as they contend that the immunity granted by section 702c should be limited to that factual circumstance.

Commencing with the 1954 case of *Guy F. Atkinson Co. v. Merritt, Chapman & Scott Corp.*, 126 F.Supp. 406 (N.D.Cal.1954), several courts have sought to limit the scope of section 702c. The cases adopting the rationale in *Atkinson* [4] distinguish between instances in which the sole proximate cause of the flooding was government negligence, and cases in which there was a concurrence of natural disaster and government negligence, or natural disaster alone. As one court noted:

> I do not interpret section 702c as granting a blanket immunity to the Government in all cases involving the destruction of, or damage to, property by every conceivable type of flood or flood water . . . . In situations where the negligence of the Government is the *sole* proximate and actual cause of the "taking" of the property, section 702(c) is not a defense upon which the Government can rely. (Emphasis in original; citations omitted).

*Stover v. United States*, 204 F.Supp. 477, 484 (N.D.Cal.1962).

Another ground for distinction has developed from the case of *Peterson v. United*

---

**3.** *See Florida East Coast Railway Co. v. United States*, 519 F.2d 1184 (5th Cir. 1975); *McClaskey v. United States*, 386 F.2d 807 (9th Cir. 1967); *Parks v. United States*, 370 F.2d 92 (2nd Cir. 1966); *Stover v. United States*, 332 F.2d 204 (9th Cir. 1964), aff'ng 204 F.Supp. 477 (N.D.Cal.1962); *Clark v. United States*, 218 F.2d 446 (9th Cir. 1954); *National Manufacturing Co. v. United States*, 210 F.2d 263 (8th Cir. 1954); *Ponderendolph v. Derry Township*, 330

F.Supp. 1346 (W.D.Pa.1971); *Villarreal v. United States*, 177 F.Supp. 879 (S.D.Tex.1959); *Peerless Serum Co. v. United States*, 114 F.Supp. 662 (W.D.Mo.1953); *Franklin v. United States*, 16 F.Supp. 253 (W.D.Tenn.1936).

**4.** *Valley Cattle Co. v. United States*, 258 F.Supp. 12 (D.Haw.1966); *Stover v. United States*, 204 F.Supp. 477 (N.D.Cal.1962), aff'd 332 F.2d 204 (9th Cir. 1964).

**1054**

*States,* 367 F.2d 271 (9th Cir. 1966), in which "flood" damage resulted from the dynamiting of an ice pack by army engineers. It appears that the *Peterson* decision was the first to limit section 702c's immunity to cases in which the negligence alleged was an act or omission pursuant to a flood control project. The *Peterson* rationale was much more fully developed in *Graci v. United States,* 301 F.Supp. 947 (E.D.La.1969), aff'd 456 F.2d 20 (5th Cir. 1971). The factual distinction adapted in *Graci* was the same as that in *Peterson,* but both the District and Circuit courts in *Graci* made substantially more extensive analysis of the underlying policies. In essence, the *Graci* courts found that there was no congressional intent to expand 702c's immunity beyond flood control projects, and that the policy underlying the broad waiver of immunity found in the Federal Tort Claims Act would not be served by a literal interpretation of the wording of 702c. The District Court concluded that:

> Although neither section z of the 1928 Flood Control Act (33 U.S.C. section 702(c)) nor the general seemingly inflexible statements in the cases of an earlier era, may totally insulate the government from liability for any and all wrongdoing
>
> . . . . .

301 F.Supp. at 956.

I am unwilling to adopt the distinction utilized by courts following the rationale in *Guy F. Atkinson Co. v. Merritt, Chapman & Scott Corp.,* 126 F.Supp. 406 (N.D.Cal.1954). Any analysis based upon a determination of *sole* proximate cause must necessarily lead the court into the morass of "contributing causes," "superseding causes," and "intervening causes." In my view this is unnecessary complication, and might well lead to narrow and overly technical factual distinctions. I do feel, however, that plaintiffs' argument based on the *Peterson-Graci* rationale has substantial merit. In my opinion such an analysis admirably serves the congressional policy behind both the Flood Control Act of 1928 and the Federal Tort Claims Act. Despite the attempts of the *Graci* courts and plaintiffs to distinguish *National Manufacturing,* however, I am un-

able to agree that *National Manufacturing* does not apply to these facts. As the Ninth Circuit noted in *Stover v. United States,* 332 F.2d 204 (9th Cir. 1964), in speaking of its earlier *Clark* decision: "if it was half dicta, we believe it was good dicta." 332 F.2d at 206. I do not believe I am at liberty to ignore what I view as the settled decisional law of the Eighth Circuit. Accordingly, the motion to strike the Eighth defense is also denied.

### DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

The United States has moved to dismiss plaintiffs' claims for lack of subject matter jurisdiction. The United States' contention is that plaintiffs did not comply with the administrative regulations promulgated pursuant to 28 U.S.C. section 2675, and such noncompliance deprives this court of jurisdiction.

The administrative regulation in question is found at 28 C.F.R. section 14.3(e), which provides:

> A claim presented by an agent or legal representative shall be presented in the name of the claimant, be signed by the agent or legal representative, show the title or legal capacity of the person signing, and be accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

The copies of the claims presented would indicate the following:

1. The claim on behalf of Agnes Lunsford and Carol O'Brien, as sole heirs and next of kin of Theophil, Alice and Norvell Gall, was presented by "Gregory A. Eiesland, Attorney for Agnes Lunsford and Carol O'Brien." It was accompanied only by a certified copy of death transcript.

2. The claim on behalf of E. F. Lodmell, Jr. as executor of the estate of E. F. Lodmell and Anna Lodmell, was presented by "Gregory A. Eiesland, Attorney for the estate of E. F. Lodmell and Anna R.

Lodmell." A certified copy of death transcript was the only document accompanying the claim.

3. The claim on behalf of Agnes Lunsford, as administratrix of the estate of Theophil and Alice Gall, was presented by "Agnes Lunsford, Administratrix of the estate of Theophil Gall and Alice H. Gall." Again, certified copy of death transcripts were the only documents accompanying the claim.

4. All three claims were presented as class claims.

A letter from A. E. Bielefeld, Field Solicitor for the Department of the Interior, makes reference to three other claims apparently presented at the same time, but these claimants are not named parties in this suit.

If plaintiffs have in fact failed to comply with a valid regulation, dismissal would be proper under Fed.R.Civ.P. 12(h)(3), since failure to meet administrative requirements is a jurisdictional defect in Federal Tort Claims suits. *Melo v. United States,* 505 F.2d 1026 (8th Cir. 1974). I am not convinced, however, that plaintiffs' compliance with section 2675 was insufficient. Defendant directs the court's attention to *Gunstream v. United States,* 307 F.Supp. 366 (C.D.Cal.1969); and *Commonwealth of Pennsylvania v. National Association of Flood Insurers,* 378 F.Supp. 1339 (M.D.Pa. 1974), aff'd 520 F.2d 11 (3rd Cir. 1975). It is true that in each of these cases, the administrative filing requirement embodied in 28 C.F.R. section 14.3(e) had not been met, and the courts accordingly dismissed.

In *Gunstream,* the claim was deficient because it was presented by the parents of an injured claimant who was not a minor. The failure to show representative capacity on the part of the parents was considered a fatal defect in the administrative claim. The form of the claim in *Gunstream* was not discussed by the court, but it appears that the claim had merely been presented by the parents with no allegation as to any representative capacity.

The *National Association of Flood Insurers* case is somewhat more illuminating. In that case, the Pennsylvania Insurance Commissioner had presented a claim on behalf of all Pennsylvania citizens suffering personal or property damages from floods. The claim was ruled defective because the mere indication of the Commissioner's title was not considered sufficient evidence of representative capacity. *See Commonwealth of Pennsylvania v. National Association of Flood Insurers,* 378 F.Supp. 1339, 1352–53 (M.D.Pa.1974). The court went on to explain, however, that the title alone was insufficient because "the letter was unaccompanied by a sufficient showing of his authority to present the claim for a class of unnamed individual property owners, *either in documentary or statutory form.  .  ."* (Emphasis added). 378 F.Supp. at 1353.

I am of the opinion that a sufficient claim was presented in this case, at least as regards the named plaintiffs, inasmuch as the signatures clearly indicate the representative capacity and legal authority by which the claim is presented. South Dakota statutes provide:

> An attorney and counselor at law has power to execute in the name of his client a bond or other written instrument necessary and proper for the prosecution of an action or proceeding about to be or already commenced; or for the prosecution or defense of any right growing out of an action, proceeding or final judgment rendered therein. S.D.C.L. 16–18–9 (1967).

and further, that:

> An attorney and counselor at law has power to bind his client to any agreement in respect to any proceeding within the scope of his proper duties and powers .  .  .  .. S.D.C.L. 16–18–11 (1967).

It is also clear that an administratrix may maintain an action for property damage, S.D.C.L. 30–15–2 (1967), and for wrongful death, S.D.C.L. 21–5–1 (1967). In my opinion, a signature as "attorney for" or "administratrix of the estate of" suffices to show the capacity in which the claim is made. If there is a genuine question as to whether authority to present the claim actually exists, there are procedures by which this can be tested. I do not feel that any requirement calling for documentary evi-

dence of authority to present a claim is in accord with the purpose of the 1966 amendments to the Federal Tort Claims Act. As one court has noted, "(t)he purpose of the amendment was not to make recovery from the Government technically more difficult." *Executive Jet Aviation, Inc. v. United States,* 507 F.2d 508, 515 (6th Cir. 1974). The motion to dismiss for lack of subject matter jurisdiction, at least as regards the named plaintiffs, will be denied.

### MOTION TO DISMISS THE CLAIM OF PLAINTIFF LEEANN EMME

■ The United States has also moved to dismiss the claim of LeeAnn Emme as the sole heir and next of kin of E. F. and Anna Lodmell. It appears from A. E. Bielefeld's letter dated December 4, 1974, that no claim was presented on behalf of LeeAnn Emme. As indicated in the previous discussion, the failure to present an administrative claim is a jurisdictional defect. *Meeker v. United States,* 435 F.2d 1219 (8th Cir. 1970). Since no administrative claim was presented, this court lacks jurisdiction over the claim of LeeAnn Emme, and said claim will be dismissed pursuant to Fed.R.Civ.P. 12(h)(3).

### DEFENDANT'S MOTION TO DISMISS CLAIMS IN EXCESS OF THE ADMINISTRATIVE CLAIMS

■ This final motion is in essence a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(h)(2). Under 28 U.S.C. section 2675(b), no action may be instituted for a sum in excess of the administrative claim "except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency . . . ."

The government accurately points out that the vast majority of cases brought under this section are personal injury cases in which the extent of the injury was not known at the time of filing the administrative claim. I see no reason, however, to limit the application of this section to such

narrow factual circumstances. Plaintiffs indicate, and I do not think it unreasonable to assume, that even the amount of property damage can be very difficult to ascertain when all of the owners are deceased. Accordingly, I believe that plaintiffs should be allowed to show that the exception contained in section 2675(b) is applicable to their case, and the motion to dismiss will be denied.

The defendant will prepare an appropriate order denying plaintiffs' motion to strike the six specific defenses asserted in the government's answer and dismissing the class suit and the claim of LeeAnn Emme, which order shall also contain the following:

The court has determined that the issues raised regarding the maintenance of a class action under the Federal Tort Claims Act, 28 U.S.C. sections 2671–2680, and the applicability of the immunity provision of 33 U.S.C. section 702(c) to flood damages not connected with flood control projects involve controlling questions of law as to which there is substantial ground for difference of opinion, and further, that an immediate appeal from this order would materially advance the ultimate termination of this litigation, in accordance with 28 U.S.C. section 1292(b). (See Rule 5 of the Rules of Appellate Procedure.)