**ELLARD CONTRACTING COMPANY, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 82–G–0237–S.

United States District Court, N.D. Alabama, S.D.

Dec. 14, 1982.

---

6. Although in his letter of October 6, 1981, defendant's counsel stated that *he* understood from the earlier correspondence of plaintiff's counsel that he wished to have a copy of the Disability Income Plan, there is no evidence that *Monsanto* so understood it, at least prior to October 6, 1980, and plaintiff claims no damages under § 1132(c) after that date.

W. Stancil Starnes and James H. Starnes, Starnes & Atchison, Birmingham, Ala., for plaintiff.

Frank W. Donaldson, U.S. Atty., Elizabeth Todd Campbell, Asst. U.S. Atty., Birmingham, Ala., for defendant.

## MEMORANDUM OPINION

GUIN, District Judge.

This is a negligence action in which plaintiff Ellard Contracting Company, Inc. ("Ellard"), asserts a claim against defendant United States of America ("United States") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, 2671 et seq.[1] This cause is presently before the court on defendant's motion to dismiss or for summary judgment or, in the alternative, to transfer to the Court of Claims, which was filed September 20, 1982. The court is addressing only the motion for summary judgment.

In its complaint, plaintiff alleges that it contracted with the Utilities Board of the City of Sylacauga ("Utilities Board") to construct an earthen dam at the Tallaseehatchie Creek Watershed in Talladega County, Alabama. Prior to that agreement, plaintiff alleges, the Soil Conservation Service ("SCS"), an agency of the Department of Agriculture, contracted with the Utilities Board and agreed to provide the Utilities Board with engineering services, technical assistance, inspection and advice during the construction of the dam. Plaintiff further alleges that SCS negligently performed or failed to perform its contract with the Utilities Board, thereby causing numerous delays in the construction of the dam. Ellard contends that the delays caused by SCS's negligence resulted in the dam being in a very vulnerable state when the Utilities Board and SCS ordered that construction be halted in December 1978. The Utilities Board or SCS, or both, then allegedly designed a temporary dike and spillway to protect the dam due to its vulnerable state, and ordered Ellard to construct the temporary structure in January 1979.

Plaintiff then alleges that the heavy rains which occurred in the spring of 1979 caused water to overtop the dam and wash away much of the structure. Substantial damage and repair expense were incurred by Ellard due to the water overtopping the partially completed earthen dam.

In response to the original complaint filed on February 1, 1982, defendant United States filed a motion to dismiss or in the alternative for summary judgment. The court responded by ordering Ellard, on April 27, 1982, to file an amended complaint, providing a more definite statement.

---

1. The court has previously dismissed defendant Utilities Board of the City of Sylacauga, in its order of May 14, 1982, for lack of subject matter jurisdiction.

Plaintiff did so on May 26, 1982. Defendant then filed its second motion to dismiss or, in the alternative, for summary judgment. The court responded, on June 24, 1982, by again ordering plaintiff to file a more definite statement concerning the nature of the alleged damages and their relationship, if any, to the flooding. On July 27, 1982, Ellard filed its second amended complaint. Defendant then filed a motion to dismiss or, in the alternative, transfer to the Court of Claims. The court, in its order of August 16, 1982, ruled that plaintiff's second amended complaint failed to comply fully with its order of June 24, 1982, and the plaintiff was ordered "to fully and clearly comply with the order of June 24, 1982." Ellard filed a third amended complaint on September 9, 1982. In response, defendant again filed, on September 20, 1982, a motion to dismiss or for summary judgment or, in the alternative, to transfer to the Court of Claims.

Plaintiff's third amended complaint contains five counts (numbered three through seven) which all state that SCS's negligent performance or failure to perform its duties, which occurred prior to the water overtopping the dam, allowed the substantial damage to occur and made necessary very expensive repairs to the dam. The structure was actually damaged by the water overtopping or flooding the dam.

Defendant's motion for summary judgment states three grounds in support of summary judgment in its favor: (1) Title 33 U.S.C. § 702c grants defendant immunity from any damages caused by floods or flooding; (2) plaintiff's claims are barred by the misrepresentation exception to the FTCA; and (3) plaintiff's claims are barred by the interference with contract exception to the FTCA. The court is of the opinion that all three grounds are well taken, and that defendant is due summary judgment as a matter of law.

The United States has been granted immunity from flood damages by 33 U.S.C. § 702c, which states in part:

No liability of any kind shall attach to or rest upon the United States for *any dam-age from or by floods or flood waters at any place . . . .*

33 U.S.C. § 702c (emphasis added). The Fifth Circuit Court of Appeals has stated:

The federal courts . . . have reached a consensus that the United States is protected from liability for damages caused by "floods or flood waters" in connection with flood control projects, even when the government's own negligence has caused or aggravated the losses.

*Florida East Coast Railway Company v. United States,* 519 F.2d 1184, 1191 (5th Cir. 1975). Numerous courts, as indicated above, have upheld this immunity. *Parks v. United States,* 370 F.2d 92 (2d Cir.1966); *Burlison v. United States,* 627 F.2d 119 (8th Cir.1980), *cert. denied,* 450 U.S. 1030, 101 S.Ct. 1740, 68 L.Ed.2d 225 (1981); *Stover v. United States,* 332 F.2d 204 (9th Cir.1964), *cert. denied,* 379 U.S. 922, 85 S.Ct. 276, 13 L.Ed.2d 335 (1964); *Callaway v. United States,* 568 F.2d 684 (10th Cir.1978). The Fifth Circuit also stated, in *Florida East Coast Railway,* that:

In enacting section 702c Congress granted immunity to the United States in "the broadest and most emphatic language," protecting it against "liability of any kind . . . for any damage from or by floods or flood waters . . . . Congress did not limit this immunity to damage done directly by inundation, but provided for immunity also from damage resulting 'from . . . flood waters.' "

519 F.2d at 1192 (footnotes omitted).

Plaintiff's allegations of damage all center around water overtopping the dam, thereby damaging it and causing plaintiff to make extensive and expensive repairs. This is exactly the type of damage the Fifth Circuit, in *Florida East Coast Railway,* declared the United States to be immune from, due to 33 U.S.C. § 702c, despite any prior negligence of the government which might have caused the flooding. Ellard argues that all the case law concerning § 702c has concerned completed flood control projects, and since the dam in this case had not been completed, § 702c does not apply to this flood damage. Plaintiff con-

tends that the section is not meant to immunize the government for its negligence during the course of the construction of a flood control project. No authority was cited to support this contention, however, and the broad, inclusive language used by the court in *Florida East Coast Railway* appears to make such a position untenable. The court therefore finds that all the damages claimed in counts three through seven of plaintiff's third amended complaint were caused by or resulted from the flooding. Defendant is immune from those damage claims.

The second and third grounds for summary judgment asserted by defendant are that plaintiff's claims are barred by the misrepresentation and interference with contract exceptions to the FTCA as contained in 28 U.S.C. § 2680(h). If plaintiff's claims do fall within either the misrepresentation or interference with contract rights exception, the court lacks subject matter jurisdiction over the action. *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953).

■ Plaintiff phrases its claims in terms of negligence, with no reference to misrepresentation. The basis of much of the alleged negligence was defendant's failure to provide accurate information in the form of designs, plans, surveys, technical services and advice to the Utilities Board and to the plaintiff. In *United States v. Neustadt,* 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961), the Supreme Court stated:

> To say ... that a claim arises out of "negligence," rather than "misrepresentation," when the loss suffered by the injured party is caused by the breach of a "specific duty" owed by the Government to him, i.e., *the duty to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his economic affairs, is only to state the traditional and commonly understood legal definition of the tort of "negligent misrepresentation,"* as is clearly, if not conclusively, shown by the authorities set forth in the margin, and which there is

every reason to believe Congress had in mind when it placed the word "misrepresentation" before the word "deceit" in § 2680(h).

366 U.S. at 706–07, 81 S.Ct. at 1300 (emphasis added). It therefore appears that much of what plaintiff labels as negligence on the part of defendant was actually negligent misrepresentation, as the essential role of SCS in the project was that of a technical adviser. Plaintiff's claims based on the negligent advice or information or failure to provide advice, are therefore barred by the misrepresentation exception to the FTCA.

■ The remaining claims not covered by the misrepresentation exception fall clearly in the interference with contract rights exception to the FTCA. Ellard alleges in essence that SCS interfered with plaintiff's contract with the Utilities Board, thereby causing numerous delays in the construction of the dam. SCS allegedly negligently ordered Ellard to undertake various stages of the construction, and negligently ordered the dam construction halted at one point. It is evident from plaintiff's allegations that Ellard is asserting that SCS has taken actions which negligently interfered with its contract rights with the Utilities Board. In *Dick Meyers Towing Service, Inc. v. United States,* 577 F.2d 1023, 1024 (5th Cir. 1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979), the Fifth Circuit held that "merely negligent interference with contract rights is not actionable." Additionally, the claims based on interference with contract rights, whether intentional or merely negligent, are barred by 28 U.S.C. § 2680(h).

In conclusion, plaintiff's allegations, which are deemed to be true in their entirety for the purposes of summary judgment, do not support an actionable claim against the defendant because: (1) all of the damages claimed result from or by flooding, from which the defendant is immunized by 33 U.S.C. § 702c; (2) the basis for most of plaintiff's allegations is negligent misrepresentation, which is excepted from the FTCA by 28 U.S.C. § 2680(h); and (3) the

remaining allegations fall under the interference with contract rights exception to the FTCA, likewise contained in 28 U.S.C. § 2680(h). Defendant is therefore entitled to summary judgment as a matter of law. A separate order in conformity herewith is being entered.