**Charles W. HUNIGAN, Plaintiff,**

v.

**UNITED INTERMOUNTAIN TELEPHONE COMPANY, etc., Defendant.**

**No. Civ–2–81–77.**

United States District Court, E.D. Tennessee, Northeastern Division.

March 19, 1982.

C. Berkeley Bell and Jerry W. Laughlin, Greeneville, Tenn., for plaintiff.

William C. Bovender and Douglas S. Tweed, Kingsport, Tenn., for defendant.

## MEMORANDUM OPINION, ORDERS AND RECUSAL

NEESE, Senior District Judge.

This is an action under the Age Discrimination in Employment Act (ADEA) by the plaintiff Mr. Charles W. Hunigan (the employee), the former personnel manager of the defendant United Intermountain Telephone Company (the employer) whose status was reduced by demotion and subsequent transfers to lower positions with the employer. The jury's verdict denied the plaintiff all relief, and the employee moved timely for a judgment notwithstanding such verdict, Rule 50(b), Federal Rules of Civil Procedure, or, in the alternative, for a new trial, Rules 59(a), (b), Federal Rules of Civil Procedure.

### I

There is no merit to that motion in its first alternative. " * * * 'The applicable judicial standard to determine the correctness of the denial of a directed verdict and a judgment notwithstanding the verdict is the same, since the motion for a judgment notwithstanding the verdict merely renews an earlier motion for a directed verdict.' * * * " *Holt v. Continental Insurance Company*, D.C.Tenn. (1970), 325 F.Supp. 283, 284, affirmed C.A. 6th (1971), 440 F.2d 652. The ground for the employee's motion for a directed verdict was that he had established a prima facie case of discrimination against him by his employer as a matter-of-fact and was, thus, entitled to a verdict as a matter-of-law.

This was not a sufficient ground for a directed verdict. *Loeb v. Textron, Inc.,* C.A. 1st (1979), 600 F.2d 1003, 1015 ("Although the McDonnell Douglas prima facie case has a foundation in experience and logic, * * * its proof is not equivalent to a factual finding of discrimination * * *.")

It was for the jury to decide whether age was a contributing factor in the employer's decision to replace Mr. Hunigan with a younger man. *Ibid.,* 600 F.2d at 1019–1020 [25]. Accordingly, the employee's motion for a judgment notwithstanding the verdict of the jury hereby is

OVERRULED.

## II

### A.

The first ground of the employee's motion for a new trial is utterly devoid of merit. The third ground thereof lacks merit. *Ackerman v. Diamond Shamrock Corporation,* C.A. 6th (1982), 670 F.2d 66, 70 (" * * * [D]ecide ADEA claims 'on a case-by-case basis, rather than [by] adopting formalistic approaches'; the ultimate issue is whether age was a factor in a decision of an employer to [demote or transfer] an ADEA claimant and whether the age of the claimant made a difference in determining whether he was to be [demoted or transferred]. * * *")

As presented on the trial, the situation herein was not one in which the "test" approved by *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, should have been utilized. Herein, a job in top-management is implicated, and under ordinary circumstances the employer " * * * would have been entitled to make its own subjective business judgments * * *" in deciding which of 2 executives to place in charge of its personnel and related work. *Loeb v. Textron, Inc., supra,* 600 F.2d at 1019.

■ If the jury had found age-discrimination against the employee by the employer, it would have been necessary that the jury make the further determination of whether that discrimination was wilful.

There was no evidence whatever that the employer discriminated against Mr. Hunigan wilfully, so the claim of the employee could not have exceeded his own estimate of his pecuniary loss of some $11,088.73; under no circumstances presented could he have recovered more than an amount double that. *See* 29 U.S.C. § 626(b).

■ The Congress, in the enactment of the ADEA, " * * * intended to incorporate fully the remedies and procedures of the FLSA [Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq.] * * *" *Lorillard v. Pons* (1978), 434 U.S. 575, 582, 98 S.Ct. 866, 55 L.Ed.2d 40, 47; therefore, just as "amounts owing" an employee for unpaid minimum wages or unpaid overtime compensation would have been due from the employer for a literal violation of the FLSA, the "amounts owing" the employee for a literal violation of the ADEA would have included only " * * * items of pecuniary or economic loss such as wages, fringe and other job-related benefits. * * *" House Conference Report on the 1978 amendments to the ADEA, reprinted in U.S.Code Cong. & Admin.News, p. 533.

If there had been a wilful age-discrimination action against the employee, he would then have been entitled to " * * * liquidated damages (calculated as an amount equal to the pecuniary loss) [to have] compensated the aggrieved party for nonpecuniary losses arising out of a willful violation of the ADEA. * * *" A doubling of the pecuniary damage would, in that event, have been intended " * * * to provide [him] *full* [emphasis by this writer] compensatory relief for losses that [we]re 'too obscure and difficult of proof for estimate other than by liquidated damages.' * * *" *Ibid.,* at pp. 533, 535.

It should be noted also in that connection that, under the claim of the employee at trial, he could have been awarded equitably no continuing "future" payments as a part of any liquidated damages, so the employee could never have approximated the aggregate amount of damages in the amount he seemed to anticipate. *Loeb v. Textron,*

*Inc., supra,* 600 F.2d at 1023 ("[I]n the few Title VII and FLSA cases in which payments in lieu of reinstatement have been made, the amounts have been relatively small and have been designed to assist plaintiff during the period in which he can be expected to find other employment. * * [B]oth continuing payments and substantial awards calculated, for example, on the basis of life expectancy would be inappropriate.")

Of course, Mr. Hunigan's employment continued with the same company, so that any equitable relief under his elected course at trial would hardly have been forthcoming. *Cf. Lorillard v. Pons, supra,* 424 U.S. at 583, n. 11, 98 S.Ct. at 871, n. 11, 55 L.Ed.2d at 48, n. 11 ("[I]t is clear that judgments compelling 'employment reinstatement or promotion' are equitable * * * [as opposed to] * * * 'legal relief' * * * [provided by] * * * judgments 'enforcing . . . liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation.' ") Of course, in view of the employee's election for the trial to seek reinstatement, it is not necessary that this potential issue be addressed at this time.

### B.

While not entitled to a new trial on the issue of the employer's wilfulness in its literal violation of the ADEA, the employee is entitled to a new trial on all other issues. The denial of all relief to Mr. Hunigan by the verdict of the jury was palpably against the clear weight of the other evidence. "* * * This Court submits issues to juries for their collective determination and customarily does not reweigh the evidence and set aside the verdict, because he feels a different result would have been more reasonable under the facts and the law. * * * Contrary to the state rule, a federal judge presiding in Tennessee over a civil action does not sit as the seventh juror. * * *

"Notwithstanding: '* * * The trial judge in the federal system has * * * discretion to grant a new trial if the verdict appears to him to be against the weight of the evidence. * * *'

\* \* \* \* \* \*

"* * * [I]f, after evaluating all the significant evidence, the trial judge is of the opinion, in the exercise of his own best judgment, that the jury has so disregarded the credible evidence that its verdict is against the clear weight thereof, the duty arises for the trial judge to check the jury's power to render a final and binding verdict by setting aside the verdict and granting a new trial, to the end that a miscarriage of justice does not result. * * *

"* * * 'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' * * * A balancing of this type would appear to this Court to serve appropriately as the test in determining also whether a jury verdict should be set aside as against the clear weight of the evidence and, therefore, contrary to ' * * * the right and justice of the case. * * *' " *Sandlin v. Pearsall,* D.C.Tenn. (1976), 427 F.Supp. 494, 495–496[1], 496[2] (citations omitted).

Such is the conviction of this Court herein:

The clear weight of the evidence was that, because of a change in the legal status of telephone-utilities and of a decimation by death and otherwise of its top management, it became expedient for the employer to restructure its operations and reorganize its personnel department.

This was obviously a nerve-racking experience for the employer and its new chief executive-officer, W.W. ("Dub") Hill, Esq. After surveying the employer's situation and prospects for a few months, Mr. Hill determined to include in its restructuring a human-resources department.

He had the plaintiff Mr. Hunigan uppermost in his mind for the new responsibility which would be added to his former responsibilities as personnel manager of the company. But, Mr. Hill's mind was changed diametrically concerning Mr. Hunigan; the former's "mind-set" became different after the employer had been visited by a team of experts in the field of human-resources from the United Telephone System (UTS).

After its own survey, this team from UTS recommended to Mr. Hill his creation of the department of human-resources he had under consideration, including adoption of the so-called HAY system of job-grading, etc. When Mr. Hill divulged to Mr. Terry Todd, the director (then) of human resources for UTS and the head of the visiting team of experts, that he was considering elevating Mr. Hunigan to this new job, Mr. Todd "turned thumbs-down" on Mr. Hunigan; Mr. Todd convinced Mr. Hill that Mr. Hill was "wrong" and Mr. Todd was "right" about Mr. Hunigan's qualifications for the new position.

This was action *by the employer,* not merely of Mr. Hill! The upshot of the "team-play" from UTS was that Mr. Hunigan was demoted to serve under Mr. Jack L. Gaddis, a younger man from UTS who had been brought from UTS as a member of the "team". (Subsequently, Mr. Gaddis succeeded Mr. Todd when the latter himself was elevated with UTS; and, when Mr. Gaddis moved-up subsequently, the 3d member of the "team" succeeded Mr. Gaddis with the employer.)

■ With the institution of the reorganization of the managerial positions of the employer, where traditionally older and more experienced managers had supervised younger and less-experienced personnel, under the revised plan younger managers with less experience with the employer were then supervising older personnel with more experience with the employer. Thus, patently, there was a systematic reversal generally of the ages of the employer's managers and, inevitably, a systematic practice of age-discrimination by the employer.

The same rules applied in this form of age-discrimination under the ADEA as would have applied under the Civil Rights Act of 1964, Title VII, *infra,* had all the managers of the employee been changed, for example only, from those of one race to those of another race:

"* * * Title VII [42 U.S.C. §§ 2000e, et seq.] with respect to race, color, religion, sex, or national origin, and the ADEA with respect to age make it unlawful for an employer 'to fail or refuse to hire or to discharge any individual,' or otherwise to 'discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment,' on any of those bases. * * *'" *Lorillard v. Pons, supra,* 434 U.S. at 584, n. 12, 98 S.Ct. 866, 872, n. 12, 55 L.Ed.(2d) at 48, n. 12 ("There are important similarities between the two statutes * * * both in their aims—the elimination of discrimination from the workplace—and in their substantive prohibitions. In fact, the prohibitions of the ADEA were derived *in haec verba* from Title VII.")

In this instance, all the employee needed to do to make-out a prima facie case of age-discrimination was to show the circumstances of the foregoing reversal of the ages of its top-managers and its effect on his status with his employer. Mr. Hunigan did this.

■ Having made its earlier subjective business-judgment, to take action which necessarily violated literally the ADEA, the employer cannot defend as to Mr. Hunigan's *individual* case on the ground that it acted *as to his job* in good-faith by selecting a younger man to replace him. *Loeb v. Textron, Inc., supra,* 600 F.2d at 1011–1012, n. 5, citing for *cf. Alexander v. Louisiana* (1972), 405 U.S. 625, 632, 92 S.Ct. 1221, 1226, 31 L.Ed.2d 536, 643[6] ("The [Supreme] Court has squarely held that affirmations of good faith in making individual selections are insufficient to dispel a prima facie case of systematic exclusion.")

■ In addition, the employer's articulation of an allegedly legitimate nondiscriminatory reason for its action, in selecting the younger Mr. Gaddis over the older Mr. Hunigan, lacked the requisite specificity to constitute such a valid reason. The employer's articulation thereof was that Mr. Hunigan lacked the "qualities" needed to do the job which the employer needed done.

What those "qualities" which Mr. Hunigan suddenly lacked were, was not made to appear, except that the employer contended that Mr. Gaddis possessed all of those "qualities"; this fell-short of the employer's

producing a legitimate nondiscriminatory reason for its demotion of the employee. *Ibid.,* 600 F.2d at 1011–1012, n. 5 ("Although the employer has a burden of production rather than of persuasion, 'The employer's defense must ... be designed to meet the prima facie case ...,' *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 360 n. 46, 97 S.Ct. 1843, 1867, n. 46, 52 L.Ed.2d 396 (1977), and must be sufficient on its face, to "rebut" or "dispel" the inference of discrimination that arises from the proof of the prima facie case.' *See McDonnell Douglas,* 411 U.S. at 807, 93 S.Ct. 1817, [1826]; *Teamsters,* 431 U.S. at 342 n. 23, 97 S.Ct. 1843, [1858 n. 23]. * * * ")

■ Where the employer has not stated a sufficient reason to meet its burden of production, the employee " * * * need only prove the elements of the prima facie case to win * * *." *Ibid.,* 600 F.2d at 1018, n. 20. That being the case here, the Court is puzzled by the verdict of the jury. "* * * [W]hen all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, whom we generally assume acts only with *some* [as in original] reason, based [its] decision on an impermissible consideration * * *." *Furnco Construction Corp. v. Waters* (1978), 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957, 967.

It is of concern to the Court when a jury has returned a verdict against the clear weight of the evidence. The very first inquiry of the Court in such an event is whether the instructions received by the jury from the Court were clear as well as correct.

A review of these instructions to the jury herein reflects that they were clear, but that the jury may have been confused by the stated claims of the employee and by the submission to it by the Court of the issue of the allegedly legitimate nondiscriminatory reason of the employer for demoting and transferring Mr. Hunigan.

The employee may want to consider restating his claim on a retrial on the basis of 29 U.S.C. § 623(a)(2) ("It shall be unlawful for an employer—* * * to * * * classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age * * *.") This may fit a theory of systematic age-discrimination more precisely.

With that adjustment, greater attention than before may need to be given the allegedly legitimate nondiscriminatory reason(s) the employer may then articulate for demoting and transferring Mr. Hunigan. If a revised articulation of a defense is no more specific than the presently-assigned reasons, there is a serious question of its sufficiency. *See* Rules 12(f), (h)(2), Federal Rules of Civil Procedure.

This was why the Court questioned (in the absence of the jury) the reason "* * * this case is here * * *" when the first evidence of systematic age-discrimination in the process of the employer's reorganization of its management had surfaced. The Court was of the opinion at that time that only a literal violation of the ADEA was involved and was hard-put to comprehend the reason the parties were going to the expense in time and money of contesting the issues when any aggregate amount of recovery would have been comparatively minimal; of course, this preceded counsel's clearer understanding of the role of the McDonnell-Douglas test and the outer limits of the damages recoverable under the ADEA.

There was further perplexity for the Court from the implications of an exhibit; therefrom it appeared that auditors representing the interest of the Public Service Commission of Tennessee had found on their own inquiry evidence from interviewing personnel of the employer of an infusion of "* * * new blood * * *" into this company in its reorganization. The Court was distressed that, for one reason or another—or a combination of them—the jury was not shown by the evidence that a youth-movement had indeed taken place in this company.

Finally, the Court considered the possibility that the jury may have been led to disregard the credible evidence by the obscuration by defense counsel of the true issue the jury was to decide. The ultimate issue was, not whether Mr. Hill had age as a contributing-factor to Mr. Hunigan's demotion and transfers *in his mind,* as posed to the jury, but whether it was a contributing factor in the actions of the EMPLOYER!

It is true, of course, that the Court could have stricken this insufficient defense upon its "* * * own initiative at any time * * ," Rule 12(f), *supra.* However, such motions are disfavored, *Lunsford v. United States,* D.C.S.D. (1976), 418 F.Supp. 1045, 1051[9], affirmed on other grounds C.A. 8th (1977), 570 F.2d 221. The Court may have been overly-persuaded by this and took the tact instead of expressing plainly to counsel its surprise under the circumstances that "* * * this case is here * * *."

Whatever may have been its causation, this Court is left with the definite and firm conviction that a mistake has been committed and hereby SETS ASIDE the verdict herein as palpably against the clear weight of the evidence and, thus, contrary to right and justice. The motion of the employee for a new trial hereby is

GRANTED as to all issues, save that of the wilfulness of the employer's literal violation of the ADEA.

### III

As the continuing impartiality of the undersigned judge might be questioned reasonably in the light of the strong expressions hereinabove, he hereby

DISQUALIFIES himself in all further proceedings herein. 28 U.S.C. § 455(a).